(No. 10935.)

Morris Novitsky, Admr., Appellant, *vs.* The Knickerbocker Ice Company, Appellee.

*Opinion filed December 21, 1916.*

1. Coroners—*coroner's verdict in Cook county is required to be filed with clerk of criminal court.* Under sections 16 and 17 of the Coroners act the coroner of Cook county, in case the testimony at the inquest tends to implicate some person as the unlawful slayer of the person over whom the inquest is held, is required to file the verdict with the clerk of the criminal court of Cook county and not with the clerk of the circuit court, as in other counties.

2. Same—*when it will be presumed that coroner's verdict was filed with clerk of criminal court.* Where a certified copy of the coroner's verdict is offered in evidence without any objection being made that the original verdict is not produced, the only objection being as to the materiality and competency of the instrument, it will be presumed that the coroner complied with the statute and filed the verdict with the clerk of the criminal court of Cook county and that he made his certified copy from that file.

3. Same—*coroner's verdict is competent evidence to prove any matter properly before the coroner.* Where the verdict of a coroner's jury has been filed with the clerk of the proper court it becomes a public record, and as such is competent evidence to be considered as tending to prove any matter properly before the coroner which appears on the face of the inquest.

4. Same—*coroner's jury cannot fix civil liability for accident resulting in the death of an injured person.* It is not within the province of the coroner's jury to fix the civil liability of anyone growing out of an accident resulting in the death of an injured person, except in so far as the finding required to be made by the statute may have such effect.

5. Same—*what is mere surplusage in the coroner's verdict and should be stricken out before admitting verdict in evidence.* Where a child is run over and killed by an ice wagon, a provision in the verdict of the coroner's jury censuring a street railway company and finding that if the company had not blockaded the street with its cars the accident would not have occurred is mere surplusage, and in an action against the ice company it is improper to admit the verdict in evidence with this provision included.

6. Instructions—*when instructions directing a verdict are erroneous.* In an action to recover damages for the death of a boy who was struck by an ice wagon at a street intersection as he came

from behind a standing street car, instructions which, in effect, direct a verdict for the defendant if the jury believed the driver exercised due care after the boy came in sight are erroneous in omitting the element, which the evidence tended to prove, that the driver approached the street intersection recklessly and at a high rate of speed, with his team not under control.

7. APPEALS AND ERRORS—*fact that the evidence is admitted as directed by the Appellate Court does not preclude review of ruling.* The fact that a copy of the coroner's verdict is admitted in evidence by the trial court in accordance with the direction of the Appellate Court when it reversed the first judgment does not preclude a review of the trial court's ruling by the Supreme Court when the record of the second trial is before it.

8. SAME—*when the appellant is not estopped on second appeal to question instructions given on a former trial.* The fact that a party in whose favor a judgment is rendered does not, by assigning cross-error, complain of instructions given for the other party, does not preclude him from questioning the same instructions when given again on the next trial, which resulted in a judgment against him, from which he appeals.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

EDGAR L. MASTERS, for appellant.

MILLER, GORHAM & WALES, and McKINLEY & HANSEN, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellant, Morris Novitsky, as administrator of the estate of Samuel Novitsky, deceased, brought suit in the superior court of Cook county against appellee, the Knickerbocker Ice Company, to recover damages for the death of his intestate. Three trials have been had. Upon the first trial the jury disagreed. Upon the second a verdict was returned for appellant and judgment was entered thereon. That judgment was reversed by the Appellate Court for the

First District and the cause was remanded for another trial. (*Novitsky* v. *Knickerbocker Ice Co.* 180 Ill. App. 188.) On the third trial the verdict was for appellee. The judgment entered upon this verdict was affirmed by the Appellate Court for the First District and a certificate of importance was granted. This appeal followed.

Appellant's intestate was a boy of less than seven years of age and was killed by being run over by one of the ice wagons of appellee near the intersection of Archer avenue and South State street, in the city of Chicago. South State street runs north and south. At or near the same point Nineteenth street, running east and west, intersects it, and Archer avenue extends southwest, the junction of the center of Archer avenue and State street being a few feet south of the junction of the center of Nineteenth and South State streets. A double-track street car line extends along the center of Archer avenue, turning north as it enters South State street and forming a junction with a double-track street car line extending both north and south in the center of South State street. The boy was run over and killed at or near the north and south cross-walk along the west side of South State street and north of the street car tracks in Archer avenue. At the time of the accident some street cars were standing on the tracks in Archer avenue as they extended into State street. It is a disputed. question how many cars were thus standing on the tracks,—whether one on the north track and one or two on the south track,— and whether they extended west beyond the cross-walk. Both the front and rear wheels of the ice wagon passed over the body of the boy and he was instantly killed.

The coroner held an inquest on the body, and one of the grounds urged for reversal is that the court erred in admitting the coroner's verdict in evidence. It is first contended that the verdict was not admissible because it does not appear that it had been filed in the office of the clerk of the circuit court. This objection is not accurately made. The

coroner of Cook county is not required to file such a verdict with the clerk of the circuit court but is required to file the same with the clerk of the criminal court of Cook county. Sections 16 and 17 of the Coroners act are as follows:

"Sec. 16. If the evidence of any witness shall implicate any person as the unlawful slayer of the person over whom the said inquisition shall be held, the coroner shall recognize such witness in such sum as he may think proper, to be and appear at the next term of the circuit court for the said county, there to give evidence of the matter in question, and not depart without leave, except that in the county of Cook the recognizance shall be to the criminal court of Cook county.

"Sec. 17. If any witness shall refuse to enter into such recognizance, it shall be the duty of the coroner to commit the witness so refusing to the common jail of the county, there to remain until the next term of the said court; and the coroner shall carefully seal up and return to the clerk of the court the verdict of the jury, and the recognizances, and it shall be the duty of the clerk to carefully file and preserve the same."

By the provisions of these sections a coroner is required to recognize any witness who testifies to any fact implicating any person as the unlawful slayer, to be and appear at the next term of the circuit court of the county, except in the county of Cook the recognizance is required to be made to the criminal court of Cook county. By section 17 the coroner is required to seal up and return to the clerk of the court the verdict of the jury and the recognizances. It is apparent that this statute requires the coroner to return the verdict to the clerk of the court to which the recognizances are required to be made. This distinction has not been pointed out in any of the cases dealing with the filing of a verdict of a coroner's jury or its admissibility in evidence. The discussion in those cases has been general, and it has been broadly stated that the statute requires the verdict of

the coroner's jury to be filed with the clerk of the circuit court. This statement is accurate as to every county in the State except the county of Cook. We will consider this point as though counsel were objecting that it did not appear that the verdict was filed with clerk of the criminal court of Cook county.

The instrument offered was a certified copy of the verdict, being certified by the coroner. The record discloses that no objection was made that the original verdict was not produced, and objection that the document produced was a certified copy was waived. The only objection made was as to the materiality and competency of the instrument. It does not appear from what paper or file the coroner made his certified copy,—whether from a file in his own office or from the verdict required by the statute to be filed with the clerk of the criminal court of Cook county. It will be presumed that the coroner complied with the statute and filed the verdict with the clerk of the criminal court of Cook county and that the coroner made his certified copy from that file. By waiving objection that the document produced was a certified copy made by the coroner appellant became bound by this presumption.

The coroner's verdict found "that the said Samuel Novitsky, now lying dead at 1824 State street, in said county of Cook, State of Illinois, came to his death on the 5th day of October, A. D. 1903, in Dr. Murray's office, corner State and Twentieth streets, from shock and crushing injuries received, caused by being struck by a horse and run over by the two left-hand wheels of ice wagon No. 214 belonging to the Knickerbocker Ice Company and driven by Martin Johnson on Archer avenue near the corner of State and Eighteenth streets, on October 5, A. D. 1903. And from the evidence presented to us this jury finds that had the C. C. S. R. W. Co. not blockaded Archer avenue with cars on both sides of street crossing this accident would not have occurred and deceased not lost his life in such a manner and

in this respect censure the above named company." It is contended that the last sentence of the verdict above quoted was not a proper finding to be made by the coroner's jury, and that the admission of the verdict in evidence, including that finding, was prejudicial error.

We have repeatedly held that when the verdict of a coroner's jury has been filed with the clerk of the circuit court it becomes a public record, and as such is competent evidence to be considered as tending to prove any matter properly before the coroner which appears on the face of the inquest. (*United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557; *Pyle* v. *Pyle,* 158 id. 289; *Grand Lodge I. O. M. A.* v. *Wieting,* 168 id. 408; *Stollery* v. *Cicero Street Railway Co.* 243 id. 290; *Foster* v. *Shepherd,* 258 id. 164; *Devine* v. *Brunswick-Balke Co.* 270 id. 504.) The statute provides that it shall be the duty of the jury at a coroner's inquest to inquire how, in what manner and by whom or what the dead body came to its death, and of all other facts of and concerning the same, together with all material circumstances in anywise related to or connected with the said death, and make up and sign a verdict and deliver the same to the coroner. The province of a coroner's jury is to determine whether there is probable cause for believing that a crime has been committed, and if the evidence of any witness shall implicate any person as the unlawful slayer of the person over whose body the inquisition is held, it is the duty of the coroner to recognize such witness to appear at the next term of the circuit or criminal court. If the person implicated by the inquest as the unlawful slayer or as an accessory is not in custody, it is the duty of the coroner to cause such person to be apprehended and committed until discharged by law. The oath required by the statute for each member of the coroner's jury to take is, that he will diligently inquire and true presentment make how and in what manner and by whom or what the person over whose body the inquisition is held came to his death. The jury

had fully complied with this oath when it stated that Samuel Novitsky came to his death from shock and crushing injuries received, caused by being struck by a horse and run over by the wagon belonging to appellee and driven by Martin Johnson on Archer avenue near the corner of State and Eighteenth streets, on October 5, 1903. Had the jury believed, from the testimony before it, that Martin Johnson, the driver, or anyone else, was criminally liable for the death of the boy, it would have been its duty to so find, and that would have been a proper finding to make. It is not within the province of the coroner's jury to fix the civil liability of anyone growing out of an accident resulting in the death of an injured person, except in so far as the finding required by the statute to be made may have such effect. It was not proper for the jury empaneled at this inquest to inquire whether the street railway company or anyone else was legally liable to respond in damages because of the death of Samuel Novitsky. The finding in the verdict that, from the evidence introduced, had the street railway company not blockaded the tracks with cars on both sides of the street crossing the accident would not have occurred and deceased would not have lost his life, and the censure of the street railway company, are mere surplusage, and it was not proper to admit the verdict in evidence with those portions included. As the verdict was offered as a whole, and undoubtedly with a desire to present these very portions of it for the consideration of the jury, the objection of appellant to its admission should have been sustained.

The verdict is inaccurate, as it described the accident as having occurred at or near the corner of Eighteenth street, whereas it was near the corner of Nineteenth street, on Archer avenue. We do not regard this variance as of such materiality as to make the proper portions of the verdict inadmissible, as there is no contention that this is not the verdict of the jury empaneled to make the inquisition regarding the death of appellant's intestate.

It is further contended that the court erred in giving defendant's instructions numbered 2, 12 and 13. The testimony offered on the part of appellant tended to prove that Martin, the driver of the ice wagon, and his helper, were coming south on State street at a rapid rate of speed; that when Nineteenth street was reached the driver turned his horses as though he intended going west on that street; that he then turned in a circle to the south, made another circle to the west and entered the north side of Archer avenue, some of the witnesses describing the course he pursued in making these turns as forming the letter S; that the driver and his helper were both sitting on a seat at the front end of the wagon with a high partition at the back of the seat; that the driver was driving with a loose line, so that he could not quickly or properly control his team; that the driver was intoxicated and his helper was whipping the horses with the loose ends of the lines; that as the wagon passed the street cars standing on the tracks in Archer avenue near the cross-walk, appellant's deceased came past the west end of the cars standing in Archer avenue; that he collided with one of the horses and was knocked down and run over by the wagon, which went from eight to twenty-five feet beyond the body, according to the testimony of the various witnesses, before the team could be brought to a stop. It was the theory of appellant upon the trial that the driver of the wagon was driving in a careless and reckless manner before and at the time he reached the place of the accident; that he was driving at a high rate of speed and did not have proper control of his team. Under this state of the record the instructions objected to were given. Those instructions are as follows:

2. "The court further instructs you that if you believe, from the evidence, that the plaintiff's intestate suddenly started across the street ahead of defendant's wagon in question, and that the driver of said wagon did not see or have a reasonable opportunity to see that the plaintiff's

intestate intended so doing in time to avoid a collision with the said deceased, then your verdict must be not guilty."

12. "The court instructs you that if you believe, from the evidence, that at and just before the time of the accident in question there was one or more street cars standing in Archer avenue a little west of the west line of State street, and if you further believe that the plaintiff's intestate, Samuel Novitsky, ran across Archer avenue in a northerly or northeasterly direction west of said street car or cars and near to the same, and if you further believe that the said Samuel Novitsky came within the range of the vision of the driver of the defendant's wagon when said wagon and team were so close to the said Samuel Novitsky that the said driver by the exercise of ordinary care in driving said team and in trying to stop said team was unable to avoid colliding with and fatally injuring said Samuel Novitsky, then your verdict in this case must be not guilty. And if you believe the facts as above stated, you cannot find the defendant guilty although you should believe that the defendant's driver was under the influence of liquor."

13. "The court instructs you that if you believe, from the evidence, that the plaintiff's intestate collided with defendant's team at or about the westerly end of one or more street cars standing in Archer avenue entirely west of State street, and if you further believe that the said Samuel Novitsky ran northerly from the westerly end of said car or cars and came within the range of vision of the driver of defendant's wagon when said team and wagon were so close to said Samuel Novitsky that the driver of said wagon, by exercising ordinary care in driving and in attempting to stop, could not avoid running into and fatally injuring said Samuel Novitsky, then your verdict must be not guilty. And if you believe the facts as above stated, you cannot find the defendant guilty even though you should believe the defendant's driver was under the influence of liquor."

Each of these instructions directs a verdict, and each of them ignores entirely the testimony on the question of the negligence of the driver and the lack of the exercise of ordinary care on his part, offered by appellant. It was not sufficient that the driver of the wagon should begin to exercise ordinary care from the moment the boy came within the range of his vision. He could see the cars standing in the street at or near the cross-walk. He admitted that he knew that this was a crowded thoroughfare at all times of the day and that many people were liable to be crossing Archer avenue on the west side of State street. It was incumbent upon him to exercise ordinary care in approaching this cross-walk and in passing these cars, as well as to exercise ordinary care after anyone came in view around the west end of the cars. By these instructions the jury were told, in effect, that the only duty devolving upon the driver was to begin to exercise ordinary care after he saw the boy; without regard to the rate of speed he was traveling, the manner in which he was handling his team, his condition as to sobriety, and as to whether, up to that point, he had been in the exercise of ordinary care. The court erred in giving these instructions.

The seventeenth instruction told the jury that if they believed, from the evidence, that the parents of the deceased, or either of them, were negligent in allowing him to go upon the street at the time and place of the accident they should find appellee not guilty. It is complained that there is no evidence upon which to base this instruction. Appellant is in no position to complain of the giving of this instruction on behalf of appellee as he asked and had given an instruction submitting this same question to the jury.

Appellee contends that the admission of the coroner's verdict in evidence is no longer open to question, for the reason that on the first appeal to the Appellate Court the case was reversed for the refusal of the court to admit the verdict in evidence, and that that holding has become the

law of the case and is binding upon this court.   This question has been conclusively settled contrary to the contention of appellee.   *Bailey* v. *Robison,* 244 Ill. 16.

Appellee also contends that the three instructions, numbered 2, 12 and 13, complained of, were given on the second trial, and as appellant on the first appeal to the Appellate Court failed to assign cross-errors questioning the action of the court in giving them he is now estopped to question those instructions.   There is no force to this contention.   Appellant was not injured by the giving of these instructions upon the second trial, as the verdict and judgment were in his favor.   He has the right now, judgment having been rendered against him, to complain of the action of the court in giving these instructions.

For the errors indicated the judgments of the Appellate and superior courts are reversed and the cause is remanded to the superior court for a new trial.

*Reversed and remanded.*