Linda Ann Brannen, a Minor, by Lawrence J. Brannen, Her Father and Next Best Friend, and Lawrence J. Brannen, Plaintiffs-Appellants, v. Martin J. Fisher, Defendant-Appellee.

**Gen. No. 49,779.**

First District, First Division.

March 29, 1965.

Rehearing denied April 15, 1965.

Nathan Shefner, of Chicago (Fred Lane, of counsel), for appellants.

Jacobs and McKenna, of Chicago (Wyatt Jacobs and Barry L. Kroll, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This action was brought by Lawrence J. Brannen on behalf of his minor daughter, Linda Ann, for the personal injuries which she sustained when struck by the automobile of the defendant, Martin J. Fisher. Brannen also sued on his own behalf for the medical expenses incurred by him in connection with his daughter's injuries. The jury returned a verdict for the defendant and judgment was entered on that verdict. The court denied the plaintiffs' post-trial motion for judgment notwithstanding the verdict or, in the alternative, for the granting of a new trial. From the judgment and from the denial of this motion, the plaintiffs bring this appeal.

No questions are raised on the pleadings. The plaintiffs do contend, however, that the defendant was guilty of negligence as a matter of law and that the verdict of the jury is against the manifest weight of the evidence, and that therefore the trial court should have entered judgment for plaintiffs notwithstanding the verdict or should have granted a new trial.

In order to determine the questions presented by the plaintiffs on this appeal it is necessary to summarize the evidence relating to the question of liability. The undisputed evidence shows that on November 18, 1959, Linda Ann, a child somewhat less than six years old, was returning home from school, where she was a kindergarten student, in the company of her nine-year-old sister. The children were walking along the north shoulder of Plainfield Road just west of Brainard Avenue in rural Cook County since there were no sidewalks along Plainfield. Brainard Avenue is a north-south road, the traffic on which must stop at Plainfield. Plainfield is a through highway running northeast and southwest, which has two blacktop surfaced lanes which are each ten feet wide and are

divided by a broken white center line. At about 3:50 p. m. on this clear, dry day Linda started to cross Plainfield and was struck by the defendant's automobile which was proceeding westward at the time.

Since most of the remaining facts which bear on the issue of liability are in dispute, we summarize the pertinent testimony of each of the major witnesses. Joseph F. Murphy, the plaintiffs' chief occurrence witness, testified that on the day in question he was returning home from his place of work, the Electromotive Division of General Motors, which was located about two miles east of the intersection of Plainfield and Brainard. He related that in driving to and from work he noticed children in the vicinity of Plainfield Road and Brainard Avenue. As he was proceeding near the involved intersection, he noticed two children, hand in hand, crossing the street from the shoulder of the road and approximately forty feet west of Brainard. He testified that he saw the defendant pass another automobile on the left side of the road in a passing lane at a speed of about fifty miles per hour. He said "these two children crossed the street, started to cross the street. One of them going across the street. The other girl was hit at the center line, on the center line of the street." After the occurrence, he found the plaintiff lying on the center line of the road and he observed skid marks which "were from one lane to the other." On direct examination, Murphy testified that there were just a few cars proceeding westward on Plainfield at the time of the occurrence, and on cross-examination he testified that the only traffic on the road at the time was his car, the defendant's car and the car which the defendant was passing.

A deposition, which a court reporter testified was taken after the occurrence, was used to impeach Murphy. The deposition contained statements, which

67

Murphy could not recall making, to the effect that ordinarily traffic is very heavy on Plainfield at the time of day when this occurrence took place because workers at the General Motors plant are leaving work and that at the particular time of the occurrence in question there was a string of traffic going west on Plainfield leaving the General Motors plant. Moreover, at trial he testified that he did not know whether he stated in his deposition that the plaintiff "darted across the street." Finally, on cross-examination, Murphy testified that the skid marks were straddling the center of the highway, but that they started on the north side of the highway and continued to the south side. In his deposition, however, he testified that both skid marks started on the north side of the highway and continued to the south side.

Frank Tichy and Richard Green, both of whom were called by the plaintiffs, testified that at the time of the occurrence they were standing in a gasoline service station owned by Tichy. The station was located on the northwest corner of the intersection of Plainfield and Brainard. Neither saw the impact or the events leading up to it because each had his back to Plainfield until he turned around on hearing the screech of tires. Tichy testified that he saw the plaintiff sliding on her back down the center of Plainfield followed by a car which he said was approximately on the left side of the road. He testified that the wheels of the car ran over the plaintiff. After the occurrence he found a dent in the hood of the defendant's car located between the hood ornament and the right front fender and he observed about thirty or forty feet of skid marks running from one lane to another. Green, Tichy's employee, testified that he saw the plaintiff skimming up the highway on her back, and when she came to rest she was struck by the right front and rear wheels of the car. He further testified that he did not see cars in

68

front of the defendant because his back had been turned to Plainfield, but that immediately in back of the defendant's car there were five or six other cars. He also said that the traffic going west on Plainfield was heavy.

Chris W. Fosco, who was the sheriff's investigator assigned to the occurrence and who was called by the plaintiffs, testified that he observed skid marks on the road which were sixty feet long. The skid marks indicated that the left wheels of the car were approximately eighteen inches over the center line and they proceeded southwest on an angle. He further testified that he tested the brakes on the defendant's automobile and found that the pedal went almost down to the floor. He also found a dent in the hood of the defendant's car.

The defendant, Martin Fisher, who was called as an adverse witness by the plaintiffs under section 60 of the Illinois Civil Practice Act (Ill Rev Stats 1963, c 110, § 60), testified that, on the day in question, he was returning home from the General Motors Electromotive Division plant where he was employed. He was familiar with the area of Brainard Avenue and Plainfield Road. He was driving westward in the right lane and never crossed into the left (eastbound) lane either before or after crossing Brainard Avenue. He testified that there was a string of cars ahead of him when he reached Brainard, the closest of which cars was about 30 feet in front of him. He said that his car and the others on the road were going at a speed of between thirty and thirty-five miles per hour. He first saw the two children standing on the shoulder of Plainfield a few feet before he crossed Brainard at which point he was between 300 and 350 feet from the children. He continued watching them at all times after he first noticed them. He said, "when I got within eight or ten feet of the children the little one dashed out in

69

front of me." At that time the defendant had moved close to the center line of the road because, as he testified when he took the stand as his own witness, he always moved over to the center of the road when he saw people on the side of the road. Although he did not sound his horn, he testified that he applied his brakes as quickly as he could after he saw the plaintiff dart out in front of his car. He also testified that recently before the occurrence he had installed new brakes on his car.

Two other men who worked at the General Motors Electromotive Division plant and who were driving westward behind the defendant, were called by the defendant. One of these men, George Rector, Jr., testified that just before the occurrence, he was driving the second car behind the defendant's automobile and that he was able to observe the defendant's car at all times. He said that the westbound traffic along Plainfield was heavy at the time and that the stream of traffic was traveling between twenty-five and thirty-five miles per hour with a space of about twenty feet between cars. He said that at no time before the occurrence did the defendant pass any car, but was always in the same line as the other cars. When he was about 400 to 500 feet from them, Rector testified that he first observed the two children standing on the shoulder of Plainfield about three or four feet from the edge of the pavement. He observed that many cars passed between the time he first observed them and the accident. He testified that when the defendant's car was about eighteen to twenty feet from the children, the plaintiff ran out in front of the car. He said the plaintiff got out about six to eight feet on the pavement when she was struck.

The second of the two Electromotive Division employees, Gordon Oldfield, who was called by the defendant, testified that at the time of the occurrence

he was driving westward along Plainfield about seven or eight cars behind the defendant's car. He said that the traffic was heavy and was moving in a continuous line ahead of him as far as he could see and that the cars were proceeding at a speed of about twenty-five to thirty-five miles per hour and were spaced about one and one-half car lengths apart. He further testified that he did not see any car pass any other car prior to the occurrence.

The plaintiffs contend that this is not a case of a child darting out from behind cars, but that what we have here is a situation in which the defendant, having seen the girls about 350 to 400 feet away, was grossly negligent in passing an automobile close to an intersection for the purpose of getting into the same opening in traffic for which the girls were waiting so that they could cross the street. Plaintiffs argue that the defendant was familiar with the vicinity and with the fact that children were there on many occasions. Plaintiffs further argue that the defendant, at the time of the occurrence, did not sound his horn, reduce his speed, apply his brakes or attempt to turn his wheel in any direction before the accident. The plaintiffs conclude that it was error to deny their motion for a judgment notwithstanding the verdict and that the verdict is against the manifest weight of the evidence. We do not agree.

We have carefully examined the testimony and in our judgment there is ample evidence to support the verdict, nor can we say that the verdict is against the manifest weight of the evidence. The plaintiffs' contention that they are entitled to a judgment notwithstanding the verdict raises the question whether, when all evidence is considered in its aspect most favorable to the defendant, there is any evidence which fairly tends to support the verdict. Turner v. Seyfert, 44 Ill App2d 281, 194 NE2d 529; May v. Columbian

Rope Co., 40 Ill App2d 264, 189 NE2d 394. In answering that question, this court may not weigh the evidence, determine its preponderance or determine the question of the credibility of the witnesses. Cardona v. Toczydlowski, 35 Ill App2d 11, 180 NE2d 709.

When considered in this manner, we believe that the jury could fairly conclude, from the evidence, the following: that the defendant was proceeding westward along Plainfield at a speed of between 25 and 35 miles per hour; that traffic in front and behind the defendant was heavy; that, prior to the occurrence, the defendant did not pass or attempt to pass any cars; that the defendant saw the children at some distance from the site of the occurrence, but that he had no reason to expect them to cross this major thoroughfare through the heavy traffic immediately in front of the defendant; that when he was within 8 to 10 feet of the plaintiff, she dashed out in front of the defendant's car; that, at that moment, the collision could not have been avoided by the defendant sounding his horn or swerving to the left into the lane carrying oncoming traffic; and that the defendant's brakes were in good condition at the time and that the defendant applied them as soon as the danger became apparent.

On the basis of these findings of fact, we cannot say, as a matter of law, that the defendant was negligent. The case of Morrison v. Flowers, 308 Ill 189, 139 NE 10, is controlling. There the Supreme Court held that a motorist is bound to recognize the fact that children will be found playing in the street and that they may sometimes attempt to cross streets unmindful of the dangers involved and that under these circumstances the driver owes to children the duty of reasonable and ordinary care. (Recent cases in accord, see: Aspland v. McMaster, 39 Ill App2d 366, 188 NE2d 508; Wolpert v. Heidbreder, 21 Ill App2d 486, 158 NE 2d 421; and Stowers v. Carp, 29 Ill App2d 52, 172 NE2d

72

370). The court in Morrison also held that a motorist who is proceeding at a lawful speed and is observing all the requisites of the law of the road and all the regulations for the operation of automobiles is not liable for injuries to a child who darts out in front of his car so suddenly that the driver cannot stop or otherwise avoid the injury. (See also: Roberts v. City of Rockford, 296 Ill App 469, 16 NE2d 568.) We have examined and considered the cases cited by the plaintiffs in support of their position, but we find them either distinguishable on their facts or not in point and hence we believe that no useful purpose would be served by discussing them here.

██ ██ In order for the verdict in this case to be against the manifest weight of the evidence, we must find that a conclusion opposite to that reached by the jury is clearly evident (Black v. DeWitt, 55 Ill App2d 220, 204 NE2d 820), or that the jury's verdict is palpably erroneous and wholly unsupported by the manifest weight of the evidence. Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 180 NE2d 347. A court of review, in passing on the question of the manifest weight of the evidence, must consider not only the verdict, but the fact that the trial judge saw and heard the witnesses, heard the arguments of counsel and then denied the motion for a new trial. Wright v. Callaghan, 50 Ill App2d 157, 200 NE2d 56; Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635.

██ Even though the evidence in this case is conflicting and it is impossible to harmonize the evidence as to how the accident occurred, it is apparent that the jury disbelieved the testimony on behalf of the plaintiffs and that the trial judge, after hearing and seeing the witnesses, denied the plaintiffs' motion for a new trial. Under such circumstances, our review of the evidence persuades us that a conclusion opposite to that reached by the jury is not clearly evident and

that the jury's verdict is not palpably erroneous or wholly unwarranted by the manifest weight of the evidence.

The plaintiffs do not assert that there were any trial errors and they do not contend that the jury was not fairly instructed on their theory of the case. Since we believe that the parties have had a fair trial, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY and KLUCZYNSKI, JJ., concur.