City of Chicago, Richard R. Hansen, et al., Plaintiff Respondent-Appellants, v. Johnny Carpenter, et al., Defendant-Petitioner-Appellee.

Gen. No. 51,871.

First District, Third Division.

April 18, 1968.

Richard B. Hansen and Julian R. Hansen, of Chicago, for appellants.

William T. Halvorsen, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from an order distributing a condemnation award. Plaintiffs Richard B. and Julian R. Hansen are owners of a one-half interest in the subject property, the other half of which is owned by defendant Robert Brunton.

Brunton originally purchased the subject property for $6,000, in August, 1961, with funds from a first mortgage

loan of $6,500 which he received from a friend. The property was held in trust by the South Chicago Savings Bank with Brunton as beneficiary. In October, 1961, he discussed the investment with George W. Hansen, Sr., a friend and past business associate, who said he would be interested in getting in on the deal. The discussion took place in Wisconsin, at or near Brunton's home. Another friend of Brunton's, Robert Pierce, was present during a part of the discussion. At one point Hansen, Sr. typed additional terms onto and signed a standard promissory note. The note was in the amount of $3,000, payable on demand and provided in part:

> "Consideration for one half interest in property 253 West 69th Street. Payable when property is sold. This note is binding on my beneficiaries, heirs, executors administrators and assigns. Assignment of one half interest in Trust 11–864 by Brunton to follow."

Hansen, Sr. originally provided that, in the event of his death, his interest in the trust was to go to his wife. Later he changed that provision to have the interest pass at his death to Richard B. and Julian R. Hansen, his sons. Hansen, Sr. died in March, 1964.

In September, 1964, the property was condemned by the City of Chicago and an award of $10,750 was deposited with the Cook County Treasurer.

A petition to distribute the award was filed by the Hansen brothers and Brunton filed an answer thereto. The petition was dismissed in May, 1966, when the Hansen brothers failed to appear for a hearing on the matter. May 25th Brunton filed his petition to distribute. On July 13th a hearing was held on the matter, at which time Brunton produced his income tax returns for the relevant years (for an accounting regarding the operation of the property) and the original note signed by Hansen, Sr. (A photocopy of the note had been mailed to the Hansen brothers on April 27th.) The Hansen brothers

had a handwriting expert with them in court on July 13th and some two hours were spent in a room adjoining the courtroom while the plaintiffs were allowed to examine the items produced by the defendant. Testimony was heard later that day. Robert Pierce testified that he saw Hansen, Sr. type out and sign the note. He also read the note when Hansen, Sr. gave it to Brunton. Brunton also testified on the 13th, as did a man from the South Chicago Savings Bank. The hearing was then continued until the 15th so that Mr. Doud, the handwriting expert, could complete his examination and tests and be ready to testify.

On July 15th the Hansen brothers moved for a continuance because Mr. Doud would be unable to finish his examination of the note for two to three weeks. The judge pointed out that on the 13th he had made it clear that he was going away after the 15th and wanted to finish the case that date. At that time Mr. Doud had told the court that by the 15th he would have ample time for his examination and could do it "very handy." The court, on the 15th, stated that since there was testimony by a disinterested third party witness that Hansen, Sr. had signed the note, the testimony of a handwriting expert witness would not overcome Pierce's testimony. The court also refused to admit 12 documents tendered by the Hansen brothers on the ground that they were self-serving. These were letters by the brothers to Brunton or his attorney.

The court entered an order which provided that the note for $3,000 was due and payable, binding on the Hansen brothers and should be paid from their share of the proceeds of the condemnation award.

Plaintiffs contend on appeal that the promissory note did not create a security lien upon the beneficial interest of the land trust as a matter of law; the trial court denied the plaintiffs a fair day in court by refusing to hear their expert's testimony and deciding the case prior to hearing

84

all offered testimony, and the court erred in failing to read offered exhibits before refusing their admission into evidence.

■ Plaintiffs first contend that the note did not create a security interest in their beneficial interest. It should be here noted that the plaintiffs also argue that there was no agreement to pay the debt out of the proceeds of the sale of the property. Under the authority of Hibernian Banking Ass'n v. Davis, 295 Ill 537, 129 NE 540, we agree that the promise to pay a debt out of the proceeds of a sale of property does not create an equitable mortgage lien on the property. However, that is not to say that the debt need not be paid out of the proceeds, if indeed that was the intention of the parties.

■ It is plaintiffs' position that the term "payable when property is sold" merely sets the due date and does not indicate that the sum is payable out of the proceeds of the sale. Following from that position is the argument that the brothers who took the property at the death of their father are not liable on the note, but rather that the note should have been presented as a claim against the estate of Hansen, Sr. Plaintiffs rely on Floor v. Schaffhausen Corp., 49 Ill App2d 97, 199 NE2d 434, and Illinois State Toll Highway Commission v. M. J. Boyle & Co., 38 Ill App2d 38, 186 NE2d 390. The Floor case merely held that the contract involved was in no way ambiguous, and, therefore, the rules of construction of contracts need not be employed. In Illinois State Toll Highway Commission, supra, the court was considering a public contract and determined that there was no ambiguity in the language of the contract.

It is the position of defendant that the language of the contract or note was ambiguous and must therefore be construed with the intention of the parties in mind. In Robinson v. Stow, 39 Ill 568, the court construed the phrase "as soon as practicable and thought proper by the parties." The court said on page 572:

85

"While it is not the province of the courts to interpolate new terms into contracts, against the evident intention of the parties, with the view of making such contracts more reasonable, yet, on the other hand, even a strained construction of the language will be adopted for the purpose of preventing obvious injustice. The intention of the parties, it is true, must govern; but the experience of human affairs teaches courts that this intention is not to be sought merely in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the objects they evidently had in view."

In United States Trust Co. of New York v. Jones, 414 Ill 265, 111 NE2d 144, the court construed an inter vivos trust and said on page 270:

"The object of judicial construction of a written instrument is to ascertain the true intent of the parties and to carry it out if it does not conflict with any rule of law, or good morals, or the public policy of the State.

". . .

"In construing a written instrument, its letter should be controlled by its spirit and purpose, bearing in mind that the terms employed are servants and not masters of an intent, and are to be interpreted so as to subserve, and not to subvert, such intent."

■■ In the instant case, the note was written and delivered by Hansen, Sr. an attorney. Brunton was not an attorney. It is well known that an instrument will be construed most strongly against its author and in favor of the other party. (Cedar Park Cemetery Ass'n, Inc. v. Village of Calumet Park, 398 Ill 324, 75 NE2d 874; Hardesty v. Forest City Ins. Co., 77 Ill App 413.) Ob-

viously Hansen, Sr. did not wish to incur any out-of-pocket expense in getting his beneficial interest in the trust. He intended to share in the receipt of income and growth in the value of the property but did not wish to pay any cash for that interest. It is true that Brunton did not pay cash and perhaps Hansen, Sr. felt that he should not have to do so either. It is clear that Hansen, Sr. meant to pay for his beneficial interest at the time it was sold and to do so out of the proceeds of that sale. If the property had sold for just the mortgage value certainly Hansen, Sr. did not intend that Brunton, who had no initial cash outlay, would be able to collect $3,000 from him. The final result here was a large growth in the property value and it is only fair that Brunton be paid, out of that growth, the amount for which Hansen, Sr. purchased the one-half of the beneficial interest.

The Hansen brothers cannot fairly get the benefit of the proceeds of sale of the property and at the same time avoid payment of the purchase price therefor. Although they argue that the note should have been presented as a claim against Hansen, Sr.'s estate, we do not agree. The intention of the parties was to have the note payable out of the proceeds of sale and, therefore, there would be no liability on the part of the estate.

■■ Plaintiffs also contend that they were denied a fair and impartial trial because the court decided the case without having heard their expert witness and the court's comments showed that the decision was made prior to a hearing of all the offered testimony. The record shows that on July 13th plaintiffs' expert was in court and told the judge that he could easily finish his examinations and appear with the results on the 15th. On the 13th the judge made it clear that he was going on vacation after the 15th and wished to finish the case before he left. On the 15th the expert was not in court and Richard Hansen testified that Mr. Doud, the expert, would need two to three weeks to complete his examina-

tion of the note and signature. The court stated there had been testimony that Hansen, Sr. signed the note in the witness' (Mr. Pierce) presence and expert testimony is overcome by the slightest evidence to show the genuineness of the signature. Because of that rule the court would not have believed the expert if his testimony was that the signature was not genuine. The ruling is supported by the language of the Illinois Supreme Court in Jones v. Jones, 406 Ill 448, 94 NE2d 314. The trial court did not err in denying the plaintiffs' request for a continuance so as to present the testimony of Mr. Doud. Furthermore, plaintiffs' contention that the court determined the issues prior to hearing all the testimony offered is merely another way of saying the court erred in failing to give the continuance so Mr. Doud could be heard. The plaintiffs did not offer any directly contradictory evidence which could have overcome the testimony of Pierce. The remarks to which the plaintiffs object do not indicate unfairness on the part of the court but rather show that the court had examined the evidence and considered the positions and stated its opinion thereon. The plaintiffs insist that the court refused to consider or believe any witness produced by the Hansen brothers. This argument overlooks the fact that the only witness they sought to produce was Mr. Doud. We have already determined that the trial court was correct in its ruling as to that witness. The Hansen brothers argue that the presumption of genuineness of a signature is negated when the purported signer has died. Here the court never indicated it relied on any such presumption. There was positive testimony by an eyewitness to the signing of the note.

■ Plaintiffs finally contend that intrinsic fairness requires the court to actually read the offered written exhibits prior to refusing their admission into evidence. On July 15th the Hansen brothers sought to introduce 12 letters into evidence. These documents were letters

from plaintiffs to Brunton or his attorney. Upon discovering that the documents were not Hansen, Sr.'s but rather those of his sons, the court sustained defendant's objection to their admission on the ground that they were self-serving. The letters were properly excluded. (ILP, Evidence, § 229.) The Hansen brothers admitted that the letters were from them and not from their father. Once the judge knew that, it was unnecessary for him to read the letters. Plaintiffs' position that the court would have better understood the situation after a reading of those documents is untenable as it would require the court to form its opinion on the basis of inadmissible evidence.

For the foregoing reasons the decision of the trial court is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.