RALPH D. OWEN, d/b/a FRANKLIN MALL, Plaintiff-Appellee, *v.* PRET' A PORTER BOUTIQUE, INC., Defendant-Appellant.

(No. 11995;

Fourth District—October 17, 1973.

Webber, Welsh & Kehart, of Decatur (A. James Shafter and Richard J. Welsh, of counsel), for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (Nicholas J. Neiers, of counsel), for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal is from a judgment in the amount of $4760.88 and costs entered in favor of the owners of a shopping mall for rent due under the terms of an oral lease as found by the trial court.

Although the underlying facts are not in dispute, a reasonably complete summation is required in order to understand the circumstances and analyze the disputed oral lease.

On June 30, 1967, the defendant entered into a written one year lease to occupy space in the plaintiff's covered shopping mall in Decatur, Illinois. This lease, which was to run from August 1, 1967, to July 31, 1968, provided for a base rental of $150 plus $15 for maintenance each month, and, in addition, an overage of 6% of the annual gross sales in excess of $30,000 to be paid within thirty days of the end of the lease year. On February 14, 1968, the parties executed a written extension of the above lease to run an additional year, from August 1, 1968, to July 31, 1969.

Over a period of time prior to the expiration of the extended written lease, the parties had a series of discussions concerning the defendant's continued occupation of space in the mall. As a result of these discussions, but without any written agreement, defendant continued to occupy the same space for one month after the written lease expired, and then on September 1, 1969, defendant moved into a larger space in the mall and conducted its business there until September 30, 1970. During the thirteen months in the new larger quarters, the defendant paid the plaintiff rent of $200 a month plus $20 maintenance. While defendant's gross profits of roughly $35,000 the first year and $65,000 the second year resulted in respective overage payments of $315.60 and $2011.80 in addition to the base rent under the written lease, the third year defendant grossed about $125,000 paying no overage.

The plaintiff contends that prior to the defendant's move into the new larger space in the mall, it was agreed that the base rental would be $200 a month plus $20 for maintenance and 6% of the annual gross sales in excess of $40,000. The defendant asserts that the agreement was simply to pay $200 a month as rent and a $20 maintenance fee. The plaintiff's wife testified that in February 1970, at the defendant's request, she prepared a written lease and mailed it to the defendant. The president of the defendant corporation testified that she had never desired a written lease and had never requested one. In addition to the testimony of the three above parties a number of written documents exchanged between the two parties were admitted into evidence. A great number of them are irrelevant, concerning tardy statements of profits as required under the original written lease and disputes from time to time over late payments of the maintenance fee which defendant periodically withheld on the grounds that cleaning and other maintenance was not properly performed. More significant is a letter from plaintiff to the defendant dated February 20, 1970, mentioning that the sales figures for the year ending August 1969 were not yet reported and that the defendant had not paid the $20 maintenance fee for February 1970 and then demanding that the defendant either sign a written lease as prepared by the plaintiff's wife providing for $200 a month base rental plus 6% of the excess gross over $40,000 by March 1, or go to a new rental agreement providing for $250 a month or 10% of the net profit, whichever was higher, and that if neither rental agreement was signed and returned by March 1, the rent would henceforth be $350 a month. Then on February 21, 1970, a letter from the plaintiff stated that 30 days notice of a rental adjustment was being given and that on April 1, the rent would be $350 a month. Also in evidence is a letter to the plaintiff, dated February 24, 1970, by which the defendant gave notice

of intent to terminate the lease on or before March 31, 1970. Most significant of all was the introduction into evidence of the plaintiff's letter of February 12, 1970, demanding that defendant sign the included lease which was also admitted into evidence over the defendant's objection, and which stated that it was an extension of the original written lease except that it covered the different larger space with a base rental of $200 a month plus $20 maintenance and an average of 6% on gross profits over $40,000.

The defendant objected to the introduction of the lease prepared by the plaintiff's wife and signed only by the plaintiff as being a self-serving document and not available as an extension of the lease agreement, but only plaintiff's version of what the agreement was was put in written form. The plaintiff asserted that it was not a binding lease but it was evidence relative to "*   *   *   the consummation of the oral agreement to which testimony was given." Plaintiff stated that both the plaintiff and his wife had testified that there was an agreement and that the writing simply showed what it was, and "I think it's relevant to confirm the fact that there was in fact a reduction to writing of the oral agreement and in fact it proves that there was an oral agreement. It is our contention that the oral lease or written lease is consequently a relevant piece of evidence and should be admitted to determine whether the oral lease was extended as testified to in this case." Defense counsel answered that it was a self-serving document, particularly when the wife had testified that she put in it what she was told by her husband (plaintiff). The court said that the document was not binding but it was evidence of what had been testified to orally: "I think it's admissible on the basis that it goes to the seat of the issue before the court and I think the court is in a position to accept it along with the other exhibits." That lease prepared by the plaintiff and admitted as above described referred to the original written lease stating that all of the terms of it were to be extended when the plaintiff moved to the larger quarters on September 1, 1969, with the new base rental to be $200 a month plus $20 maintenance and an overage of 6% on the excess of $40,000 gross profit with all other provisions to remain the same. That lease was dated September 1, 1969, and signed by the plaintiff although both the plaintiff and the plaintiff's wife testified it was prepared in February of 1970.

In general, plaintiff's testimony as to the negotiations preceding the defendant's move into the larger quarters consisted of what his belief or what his understanding of the agreement was, although at one point when directly asked what he had told the defendant the rent would be for the additional space, he answered: $200 per month plus the 10%

maintenance cost." This is the only reference in the record as to what plaintiff told the defendant the rent would be.

Also, when testifying to typing the lease described setting forth the terms according to plaintiff's viewpoint, plaintiff's wife testified that she was aware that there was an ongoing dispute between the defendant and plaintiff concerning the terms of the rental agreement on the new larger space.

On the defendant's side, in addition to her testimony denying that there was any overage under the new oral agreement, a letter dated December 16, 1969, from the defendant to the plaintiff was introduced which stated that before moving to the new location the terms for the rent were completely decided and: "At that time and still continuing, the rent is $200 per month; no more and no less. This amount was agreed upon explicitly. The terms are binding as agreed upon at $200 a month."

Plaintiff's complaint was filed on November 13, 1970, and defendant's answer of December 2, 1970, responded to all three counts and as an affirmative defense stated that on August 1, 1969, an oral lease was negotiated providing for a rental of $200 a month and $20 maintenance, and that the plaintiff had accepted that rent through August 31, 1970, when the defendant finally vacated the premises.

A judgment order was handed down on March 16, 1972, awarding the plaintiff the sum of $4,760.88 finding that the plaintiff's Count I was proved by a preponderance of the evidence.

■■ "A self-serving declaration is a statement, oral or written, or an equivalent act, by or on behalf of a party which if admitted would constitute evidence in his favor." *Werdell v. Turzynski*, 128 Ill.App.2d, 139, 150, 262 N.E.2d 833.

■■ Letters between parties may be admitted as part of a mutual correspondence, and such correspondence which was carried on in the course of business and disclosing the nature of the transaction in question may be admissible. (*Estate of Fushanis v. Poulos*, 85 Ill.App.2d 114, 229 N.E.2d 306.) However, where such letters are merely self-serving they should generally be excluded. *City of Chicago v. Carpenter*, 95 Ill.App.2d 81, 238 N.E.2d 70.

■■ A memorandum relating to the terms of an oral contract which was made at the time by one of the parties negotiating the contract and read to the other without dissent or made in such circumstances as to indicate mutual assent, although not a valid written contract, may be competent as substantive evidence tending to establish along with other evidence the terms of the contract. (*Central Mutual Insurance Co. of*

*Chicago v. St. Paul Mercury Indemnity Co. of St. Paul,* 291 Ill.App.50, 9 N.E.2d 355.) But, where such a memorandum is made after the transaction and not in the presence of the opposite party, it cannot be used for the purpose of establishing the facts therein contained, but only to refresh the recollection of a witness. *Juilliard v. Friedman,* 174 Ill.App. 259.

The proposition that rulings of the trial court with respect to the admissibility of evidence should be presumed correct by a reviewing court in the absence of a showing to the contrary applies to documentary evidence. *Novitsky v. Knickerbocker Ice Co.,* 276 Ill. 102, 114 N.E. 545.

■■ Not every erroneous ruling on evidence is ground for reversal. Such rulings are harmless where the result reached was not affected thereby and was the only one warranted by the other evidence in the case. (*Gillespie v. Norfolk & Western Ry. Co.,* 3 Ill.App.3d 779, 278 N.E.2d 420.) In a case tried by the court without a jury, error in admitting incompetent evidence is not ground for reversal where there is sufficient competent evidence fairly tending to support the judgment. (*McFail v. Braden,* 19 Ill.2d 108, 166 N.E.2d 46.) A reviewing court will affirm the judgment of the trial court if it is justified in the law for any reason or grounds appearing in the record (*Ingram v. License Appeal Com.,* 131 Ill.App.2d 218, 268 N.E.2d 469); and, in the absence of a showing that the evidence was insufficient, the reviewing court will presume that the verdict was based on sufficient evidence. (*E. H. Chicoine Contractors, Inc. v. Investors Realty and Management Corp.,* 130 Ill.App.2d 256, 264 N.E.2d 765.) However, there must be some legally sufficient ground to support a judgment. *McCarthy v. Katzin,* 318 Ill. App. 639, 48 N.E.2d 554.

■■ Where there is conflicting evidence the appellate court is not authorized to determine on which side the preponderance lies because the question of preponderance does not arise in the appellate court. (*Brannen v. Fisher,* 57 Ill.App.2d 64, 206 N.E.2d 458.) However, where a judgment is palpably wrong, either contrary to the evidence or with no evidence at all to support it, it is the duty of the reviewing court to set it aside. *Allendorf v. Elgin, J. & E. Ry. Co.,* 8 Ill.2d 164, 133 N.E.2d 288.

■■ In the instant case the trial court erred in admitting into evidence the "written lease" prepared and signed by the plaintiff alone in February 1970 approximately six months after the original written lease as extended had expired, and defendant had moved into the new larger premises. Without this document there is no evidence to support the judgment and it must therefore be reversed. The exhibit in point was

clearly a self-serving document and is not admissible under any exception such as to show that there was an ongoing controversy between the parties or to show that plaintiff's position was consistent when defendant asserts otherwise. A judgment cannot be sustained merely by conclusions as to what the parties most likely intended, no matter how reasonable it may appear. Plaintiff at one point testified that the original written lease was "extended" and that is the import of the lease prepared by plaintiff on February 12, 1970. However the original lease had expired by its own terms, the new tenancy covered a different location in the mall, and even according to plaintiff's version, both the base rental and the overage was altered. Therefore, plaintiff's case consists of his own testimony that the overage was a part of the oral lease, but even that is diluted by plaintiff's and his wife's testimony as to a continuing controversy between the parties over the rent and plaintiff's attempt to change the rental in March of 1970. The gist of plaintiff's case, even in his brief on appeal, is that the parties *must* have intended for there to be an overage because the earlier written lease so provided, and it would not be reasonable for plaintiff to have provided a much larger space to a very successful business for less total rent than before. The judgment for plaintiff cannot be upheld merely because it seems logical or probable that the terms of the oral lease were as plaintiff contends. Therefore the decision of the trial court was against the manifest weight of the evidence and must be reversed.

Reversed.

CRAVEN, P. J., and SMITH, J., concur.