S. M. WILSON & COMPANY, Plaintiff-Appellee, *v.* THE PREPAKT CONCRETE COMPANY, Defendant-Appellant.

(No. 73-202;

Fifth District—October 7, 1974.

Garry E. Peel, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellant.

Frank C. Mansfield, of Belleville, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The plaintiff-appellee, S. M. Wilson & Co., a general contractor on a construction project for an addition to the St. Elizabeth's Hospital in Granite City, Illinois, brought a contract action based upon the theory of promissory estoppel against the defendant-appellant, The Prepakt Concrete Company, a subcontractor specializing in foundation work. The defendant-appellant denied the existence of any contractual obligation and refused to perform. The plaintiff-appellee contracted with another foundation work subcontractor at an increased cost. Damages sought were the difference between the bid of the replacement subcontractor and the original bid of the defendant-appellant, The Prepakt Concrete Company. No questions were raised on the pleadings.

The jury rendered a verdict for the appellee in the sum of $10,950 and judgment was entered upon this verdict. Following judgment the court denied the post-trial motions of the defendant-appellant for a judgment notwithstanding the verdict or for a new trial or for a substantial remittitur. A remittitur of $244 was allowed by the court, following which judgment was entered for the appellee for $10,706. Appeal is taken from the jury verdict, the judgment, and the rulings on the post-trial motions.

Appellee, a general contractor in Granite City, Illinois, submitted a successful bid for a construction project involving an addition to the St. Elizabeth's Hospital in Granite City. Prior to submitting its bid, bid invitation cards were sent to approximately 30 subcontractors, asking them to bid on portions of the work. The appellant, which performs specialized type of foundation work, received a bid invitation card following which it made a telephone proposal to the appellee. This proposal was made on June 24, 1968, and under the same date it confirmed its proposal in writing, the last paragraph of the letter of transmittal accompanying the proposal stating:

"We sincerely hope that our quotation to you will help to secure this job and look forward to working with you on this project." This written proposal contained the statement that it would expire on July 31, 1968.

After appellee's bid had been accepted by the hospital on July 16, 1968, there was a delay in executing the contract. This resulted from the

estimate exceeding the amount budgeted and necessitated further negotiations between the hospital and the Federal government, which was underwriting a portion of the costs. This problem was resolved and the general contract was awarded on September 24, 1968, to plaintiff-appellee. On August 9, 1968, appellee advised appellant that it was likely it would be awarded the contract and that it intended to employ the appellant for the piling work. On October 15, 1968, appellee sent to appellant a letter of intent to award the subcontract for the foundation piling. On October 17, 1968, appellant's treasurer notified appellee by letter that the appellant would not do the job.

This court is confronted with two major issues: is the theory of promissory estoppel applicable in this case, and if applicable, was the trial court's judgment correct.

The record shows that initially both parties submitted instructions based on contract theory. With regard to these instructions the trial court stated:

> "A number of instructions based on contract theory have been submitted by the plaintiff (in addition to those on promissory estoppel). The substantive aspects of the case were discussed at length this morning in an earlier conference and the court gave counsel its opinion that the case must rest on promissory estoppel rather than any formalistic written contract or oral contract accepted * * * on the whole matter the court is of the opinion we knocked the contract theory out of the case this morning and restricted the plaintiff to promissory estoppel proof rather than any claim of oral contract * * *."

■■ The doctrine of promissory estoppel is recognized in Illinois. Both the appellant and appellee agree on this point. The question confronting the court is whether or not it is proper to apply it in this case. Both appellant and appellee cite numerous authorities and cases expounding the elements of promissory estoppel. These cases require that there be a promise unambiguous in terms, that there be reliance on such promise by the party to whom it is made, that this reliance be expected and foreseeable by the party making the promise, and that the one to whom the promise is made in fact rely upon it to his injury.

As pointed out by appellee, in the construction industry the relationship between contractor and subcontractor typically involves these facts: An owner puts a particular project up for bid. Before interested general contractors submit bids, they solicit bids from subcontractors and suppliers. There may be and frequently are a large number of such subcontractors and suppliers. Based upon the totals of low subcontractors and supplier bids and upon other considerations, general contractors then

submit bids to the owner. Following a determination of the low bid, the successful general contractor then sends subcontracts to each of the low-bidding subcontractors based upon their initial estimates.

■■ It is obvious to this court that a general contractor will suffer financial loss if one or more of the subcontractors whose bids he used as a part of the total bid which procured the job for him refuses to perform after the job is awarded to the general contractor. We have no hesitancy in saying that the theory of promissory estoppel was appropriate in this case and that the trial judge was correct in so ruling.

■■ Under the circumstances in this case, of what effect was the July 31 expiration date contained in appellant's bid proposal? The record shows that following July 31 appellant and appellee communicated on several occasions regarding the job on which appellant had bid. Nothing that transpired in these communications would have led appellee to believe that appellant did not plan to do the piling work. Appellee states that appellant repeatedly indicated both willingness and intention to do the work by direct assurances and by participating with appellee in numerous details of the preliminary planning for the job. It was not until October 17, 1968, more than 2½ months after the expiration date of July 31, that appellant notified appellee it would not perform.

Appellant cites *Brook v. Oberlander*, (1964), 49 Ill.App 2d 312, as the only Illinois case which meets squarely the problem of promissory estoppel as applied in the construction industry. In that case the court held for an electrical subcontractor. But that case is distinguishable from the instant case in two important respects. In *Brook* the court found that:

> "* * * there is a variation between the description of the work as it appeared in the bid of the defendant and as set forth in the alleged acceptance by the plaintiff corporation." (49 Ill.App.2d at 317.)

The court felt that these variations were material. Also, in *Brook* the bid was submitted to a partnership called "Abbot Construction Co.," but acceptance of the bid and preparation of the proposed contract was by a corporation called "B. R. Abbot Construction Co." Consequently, as a matter of law the bid was invited by one party and the subcontract was extended by another. In the instant case there was no misunderstanding about the parties involved and the record does not disclose any substantial difference between the bid proposal and the proffered subcontract.

Appellant also cites *Hughes v. Encyclopaedia Britannica, Inc.* (1954), 1 Ill.App.2d 514, an action to require the employer to continue purchasing annuities for employees. It was alleged that the employer failed to keep a promise of payment of such premiums on a group annuity

contract for retirement benefits. The court recognized that the doctrine of promissory estoppel is used in Illinois but concluded that the employees had not made any detrimental change of position because of the promise of the employer—an essential element if promissory estoppel is to apply. The court also found that there was no fraud and no intent to deceive. However, it is not essential to the doctrine of promissory estoppel that either fraud or intent to deceive be present.

Both appellant and appellee cite many cases from other jurisdictions in which the principle of promissory estoppel was involved. Briefs and arguments of the appellant do not indicate to us that any reasoning in these cases would prevent the doctrine of promissory estoppel from applying in the instant case. Appellant understood the purpose and the intended end result of its bid. There was no material variance between the bid proposal and the proffered subcontract. Although the bid proposal contained a termination date of July 31, actions of the appellant after that date reasonably led the appellee to believe that negotiations were still alive. Under these circumstances it would be an injustice to the appellee and a serious threat to the basis upon which construction contracts are implemented to hold that the appellant subcontractor is not bound and is immune to the application of the theory of promissory estoppel. In this case the trial court judge formulated and gave two instructions to the jury. In our opinion these instructions state fairly the burden which had to be met by the appellee general contractor.

Appellant objected to certain documents offered by the appellee on the theory that they had not been previously disclosed and that there was an element of surprise. The trial court found that:

> "The defendant was not misled and had opportunity to inspect documents offered in this case."

Our review of the record leads us to confirm the finding of the trial court that appellant was not prejudiced by not seeing all of these documents before they were offered in evidence by the appellee.

Appellant also argues that there should have been a more substantial remittitur. Both appellant and appellee supplied figures and information regarding differences in cost between the job as done by the subcontractor procured by the appellee and the bid proposal of the appellant. A review of the record convinces us that the trial court did not act arbitrarily in deciding that a remittitur of $244 was all that was allowable.

For the reasons stated herein the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

EBERSPACHER and CREBS, JJ., concur.