DANIEL HUEGEL, Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. JOHN R. SASSAMAN et al., Defendants and Counterplaintiffs-Appellants and Cross-Appellees.

Second District   No. 78-429

Opinion filed August 30, 1979.—Rehearing denied September 26, 1979.

North, Ohlson & Logli, of Rockford, for appellants.

Robert G. Coplan, of Connolly, Oliver, Goddard, Coplan and Close, of Rockford, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendants, John Sassaman and Imperial Hammer, Inc. ("Imperial"), appeal from the judgment below entered in favor of plaintiff, Daniel Huegel, on count II of his complaint and against defendants on their counterclaim. Plaintiff cross-appeals from an order dismissing count I of his complaint.

This action arose out of an uncompleted business transaction between Huegel, as purchaser, and Imperial as seller of a distributorship for the manufacture and sale of industrial tools. Huegel brought suit to recover a partial down payment and Imperial and Sassaman counterclaimed, seeking damages for breach of contract. Because the dealings between the parties are at the heart of any decision in this case, a rather detailed statement of facts is required.

During the summer of 1973, Mike Haugen was a manufacturer's representative for Imperial, an Illinois corporation which deals in industrial hammers and related products. Imperial's president and sole shareholder is defendant Sassaman. In June or early July of 1973, Haugen visited plaintiff Huegel and his wife at their Wisconsin home. The three had been involved in a business relationship several years before. The Huegels had just lost a distributorship they had been operating and wanted to explore some other business venture. Haugen informed them about a possible Iowa distributorship for Imperial. The Huegels were originally from Iowa and expressed interest in the distributorship.

In early July 1973, Sassaman, Haugen and the Huegels met at Imperial's Illinois office. Sassaman explained business operations and discussed a purchase price of $30,000, with a $15,000 down payment. The Huegels returned to Wisconsin to consider the proposition.

On July 25, 1973, Haugen again visited the Huegels. They gave him a $5,000 check payable to Imperial as part payment of the $15,000 down payment. Haugen delivered the check to Sassaman who wrote the Huegels acknowledging receipt and stating that "[i] n the event the loan doesn't go through, your $5,000.00 initial down payment will be returned to you."

The loan referred to in this letter was to be from the Citizen's Saving Bank of Anamosa, Iowa. On August 6, 1973, the Huegels, Sassaman, Haugen and two officials of Citizen's Bank met at the bank to discuss the loan. The bank asked for contracts between Imperial and the Iowa companies with which it was doing business to be used as collateral for any loan. According to Sassaman, he twice told the bank officials that his business was not carried out through formal contracts, but through purchase orders and packing tickets.

On August 15, 1973, Huegel signed a "Regional Manufacturing Distributor Agreement." This agreement, which detailed distributor/ Imperial relations, provided that it "supercedes and invalidates any and all agreements heretofore entered into and by and between the parties hereto * * * ." While the document contained a space for a purchase price, this space was left blank.

Also on August 15, Huegel gave Haugen a second check for $5,000 payable to Imperial. The check, however, was post-dated to September 15, 1973. The Huegels testified that Haugen was informed that this postdating was necessary in order to obtain the funds to cover the check. Haugen testified that he had no recollection of being so informed and that he had not noticed the check's date. Sassaman testified that he, too, had not noticed that the check was post-dated. Sassaman signed the agreement and successfully cashed the check on August 21.

Haugen sent to the bank purchase orders and delivery receipts along with a Dun & Bradstreet report on September 22. On September 24, Joanne Huegel informed the bank by telephone that she and her husband were no longer interested in a distributorship and asked that their loan be denied. It is clear from the record, however, that bank officials would not have granted the loan in the absence of assignable contracts. After the loan had been denied, Sassaman offered to finance the Huegels himself at current bank rates. The Huegels refused this offer and demanded the return of the $10,000 paid toward the down payment.

When payment was not forthcoming, the Huegels filed a two-count complaint. Count I, which was based on an alleged violation of the Wisconsin Franchise Disclosure Act, was dismissed by the trial court. This cause then proceeded to trial on count II, which alleged fraud. The trial court made no finding of fraud, but instead found for the plaintiff on the grounds that there was no binding contract between the parties. The court concluded that there were two conditions precedent to the formation of the August 15 contract which had not been satisfied: (1) financing and, (2) down payment of $15,000. The trial court also noted that the failure of the agreement to specify a price term was evidence of an incomplete contract.

■■ A preliminary issue on review is the effect of plaintiff's failure to amend his complaint to conform to the proof. While finding for the plaintiff on the fraud count of his complaint, the trial court based its decision on incomplete contract formation. Plaintiff, however, did not seek to amend his complaint to encompass a theory of an absence of contract. While it is true that normally the allegations and the proofs must correspond, the failure of the defending party to object to a variance constitutes a waiver of the issue. For if the defendants had objected, the plaintiff might have been able to amend the pleadings. (*Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 635, 360 N.E.2d 1324, 1328.) Thus we may proceed to discuss the contract formation issue.

■■ The most important issue is whether the trial court properly considered evidence of negotiations and agreements entered into prior to August 15 in determining that financing was a condition precedent. Defendants argue that the August 15 contract was a final and complete expression of the parties' agreement and that the parol evidence rule bars consideration of any prior negotiations or agreements about which the contract is silent. Since the contract of August 15 contains no conditions, defendants contend it was error to impose one on the basis of the July 27 letter. Defendants' argument would be persuasive had the court found that securing financing was a condition precedent to *performance* of the contract. However, the court found financing a condition precedent to

*formation* of the contract and it is well settled that parol evidence is admissible to show that the contract was intended to take effect only upon compliance with certain conditions. *Haas v. Cohen* (1973), 10 Ill. App. 3d 896, 899, 295 N.E.2d 28; Calamari & Perillo, Contracts §3—4 (2d ed. 1977).

We find it clear from the record that neither party intended the proposed contract to be effective until financing was secured. All parties knew, for example, that plaintiff did not have sufficient funds to purchase the franchise and that a loan was needed to pay the $20,000 balance. The July 27 letter from Sassaman to the Huegels specifically stated that "in the event the loan doesn't go through, your $5,000 initial down payment will be returned to you." Thus defendants could not have intended to bind plaintiff with the August 15 document when they knew the financing indispensable to the purchase had not been secured. Further we find that the lack of a price term in the distributor agreement is additional evidence that the parties did not yet intend a binding agreement.

It might be argued that the financing condition obligated the Huegels to pursue other reasonable sources of financing, specifically the offered loan from defendants. However, the July 27 letter stated that "in the event *the loan* doesn't go through * * * ." (Emphasis added.) This language indicates an understanding that plaintiff was only obligated to pursue financing through the Citizen's Saving Bank. Since that loan was never approved, the condition precedent to the formation of the contract was not satisfied and the contract failed. Defendants' argument that plaintiff rendered performance of the condition impossible by asking that the loan not be approved is unpersuasive, since Sassaman testified that the collateral specifically required by the bank could not be furnished.

In sum we find that the evidence clearly supports the trial court's finding of a lack of a binding contract. In upholding the trial court on these grounds, we find it unnecessary to consider the allegations of fraud or the effect of the Wisconsin Disclosure Act. The remaining issue concerns defendants' counterclaim for breach of contract and promissory estoppel. Having determined that the parties failed to enter into a contract, there can be no counterclaim based on breach of contract. However if the defendants were able to establish that they reasonably relied on plaintiff's promises, they may recover their expenses on a theory of "promissory estoppel" despite the absence of a contract. (*Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 311 N.E.2d 138.) Defendants in this case contend that it was reasonable to begin preparations for the franchise when an agreement had been signed and $10,000 paid down. We disagree. As stated above, the agreement to purchase the franchise was conditioned upon securing financing. We find

it unreasonable to undertake expensive preparations before this key condition was satisfied.

Accordingly, the judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.