ALTHOFF INDUSTRIES, INC., Plaintiff-Appellee, *v.* ELGIN MEDICAL
CENTER, INC., Defendant.—(ELGIN CENTER, INC., Defendant-Appellant.)

Second District    No. 80-589

Opinion filed April 30, 1981.

Donald W. Truckenbrod and Thomas J. Rupp, both of McHenry, for appellant.

James M. Boback, of Boback & Bianchi, Ltd., of Crystal Lake, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Elgin Center, Inc., appeals from the entry of a partial summary judgment on the issue of liability and from a judgment of $57,312 for damages entered upon a jury verdict in favor of plaintiff, Althoff Industries, Inc., in its action for breach of contract.

These parties entered into a contract on September 2, 1977, whereby plaintiff agreed to install electrical service in a building being constructed by defendants in Elgin. Under its terms, plaintiff was to commence work "after receipt of notice from the owner to do so [and complete the job] * * * as soon as possible after commencement." Under the heading "additional contract modifications" several provisions were added to the printed form contract. Paragraph five provided: "The owner agrees to furnish the subcontractor with documentation of the availability of funds to complete the work called for within before this subcontractor shall be expected to start work." The parties also entered into two other contracts on September 16, 1977, whereby plaintiff agreed to install heating, ventilation and air conditioning in the building. As was true with the first contract, plaintiff was not required to begin work on the project until it had received notice from defendants to do so, except that it was obligated to start work 10 days after receipt of notice and it was to have substantially completed the work by the end of February 1978. In all other respects, these contracts were identical with the first contract, including the provision obligating defendants to furnish plaintiff with documentation of the availability of funds before plaintiff shall be expected to commence work.

The discovery deposition of Carol Travis, the president of defendant, Elgin Center, Inc., offered by plaintiff in support of its motion for partial summary judgment, states that at the time these contracts were entered into plaintiff knew that defendants had not yet obtained a construction loan and for this reason, paragraph five relating to defendant's obligation to provide documentation of availability of funds was added to the contract at the plaintiff's request. She also stated that no notice was ever given plaintiff to commence work on the project because defendants were unable to obtain a construction loan. The affidavit of J. L. Althoff, president of plaintiff corporation, states that in order to meet the deadline

for completion of the work called for in the contracts, he authorized the purchase of certain materials which were specifically designed for the construction of the building and that these materials could not be used in any other capacity. He also stated that he never received notice to commence work and that as a result of defendant's failure to give notice, he had been unable to complete the work called for under the contracts and he therefore had lost profits which would have been received had performance of the contracts been completed. He further stated that paragraph five was added to all three contracts at his special instance.

Defendant also offered an affidavit of Carol Travis in response to plaintiff's motion for summary judgment. There she stated that plaintiff knew defendant was arranging a construction loan but had not obtained approval for the loan and that those contracts "could not and would not be performed unless a construction loan was obtained." She also stated that the contracts were entered into based on this knowledge and that paragraph five was added to the contract to verify the agreement of the parties that construction would not start and that "the very contracts themselves would not be performed until the construction loan was obtained." Carol Travis' affidavit went on to recite that plaintiff had told defendant a down payment was required on all special order merchandise and that no special materials would be ordered without defendant paying for them in advance and giving specific authorization to the plaintiff to order it. She further stated that based on plaintiff's requirement for advanced payment, defendant paid plaintiff $4,000 on February 1, 1978, for certain boilers.

Based on its assessment of the foregoing, the trial court entered summary judgment on the issue of liability in favor of plaintiff and set the matter for trial on the issue of damages. Following jury trial, plaintiff was awarded damages for lost profits, the price of the equipment it purchased, storage, and interest. On appeal, defendant challenges the summary judgment on the grounds that (1) no proof was presented as to the corporate existence of the plaintiff; (2) that a genuine question of material fact existed as to whether defendant's ability to obtain a construction loan was a condition precedent either to the existence of the contract or to its obligation to give plaintiff notice to commence work; and (3) that inserting the provision in the contract requiring defendant to provide documentation of its loan acted as a demand by plaintiff for adequate assurance of defendant's performance pursuant to section 2—609 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—609) and, therefore, plaintiff should not have taken any action to its detriment, *i.e.*, order the equipment. As to the trial on the issue of damages defendant contends that (1) certain evidence was improperly excluded; (2) plaintiff's counsel made improper remarks during closing arguments to the jury; (3)

prejudicial error occurred when the court permitted plaintiff too wide a latitude in cross-examining Carol Travis; (4) that the court erroneously refused to give certain instructions tendered by defendant; and (5) that certain of the witnesses for the plaintiff were improperly permitted to testify from written memoranda.

■■ We consider first whether the failure to present proof of plaintiff's corporate existence should have precluded the entry of summary judgment. Defendant asserts that as it denied in its answer the allegation in the complaint that plaintiff was an Illinois corporation, it was incumbent upon plaintiff to prove its corporate existence. Plaintiff, however, correctly points out that the question of corporation existence is not material to the issue of whether defendant was liable for breach of contract and it could correct its name in the caption of the pleading by amendment in order to show the correct State of incorporation. In any event, any defect was cured when the complaint was subsequently amended to show that plaintiff was incorporated in Delaware and is licensed to do business in Illinois. Since defendant did not file an answer to the amended pleading it will be deemed to have admitted plaintiff's corporate existence.

Defendant contends next that a disputed issue of fact existed as to whether its ability to obtain a construction loan was a condition precedent to existence of the contracts.

Defendant argues first that obtaining a construction loan was a condition precedent to its obligation to provide documentation of availability of funds to plaintiff and to its obligation to notify plaintiff to commence work. Defendant maintains that paragraph five of the contracts is ambiguous and parole evidence of an oral agreement to this effect should be considered in determining whether a genuine question of material fact existed as to whether defendant breached the contracts. Secondly, defendant argues that the contracts do not express the entire agreement of the parties and that they may show by parole evidence that a writing, although complete on its face, was never executed or delivered as a contract. Defendant relies upon the counteraffidavit of Carol Travis as raising a question of fact whether obtaining a construction loan was a condition precedent to the existence of the contract.

■■ Where there is no ambiguity in the written terms of a contract, the language of the instrument affords the sole criterion of the parties' intentions. (*Village of North Riverside v. Brookfield-North Riverside Water Com.* (1973), 15 Ill. App. 3d 752, 305 N.E.2d 221.) Where, however, the language of a contract is ambiguous, parole or extrinsic evidence is admissible to explain or supplement the uncertain language. (*Riemer Bros., Inc. v. Marlis Construction Co.* (1978), 64 Ill. App. 3d 80, 380 N.E.2d 1160.) A contract is ambiguous only if the language employed is susceptible of different constructions when read in its plain and ordinary

meaning. Ultimately, the existence of an ambiguity is a question of law to be determined by the court. (*Village of North Riverside v. Brookfield-North Riverside Water Com.; Farnsworth v. Lamb* (1972), 6 Ill. App. 3d 785, 286 N.E.2d 74.) Examined in this light, it appears that the language employed in paragraph five of the contracts in the present case is not ambiguous. When read in its plain and ordinary meaning, the language in question states that plaintiff will not be required to commence the work until defendant provides evidence of sufficient financing to pay for it, a provision clearly inserted to benefit plaintiff. Accordingly, parole evidence seeking to establish an oral agreement that defendant was not obligated to perform its part of the contract until it could obtain financing would be improper on the basis of ambiguity for consideration by the trial court in ruling on the motion for summary judgment.

■■ ■ Parole evidence may also be admissible to show that a written document was not intended to take effect until the occurrence of a contingency. (*Passanante v. Callier* (1978), 61 Ill. App. 3d 360, 377 N.E.2d 1304; *State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43; *Jost v. Cornelius* (1948), 334 Ill. App. 279, 79 N.E.2d 310.) Such evidence would not contradict or vary the terms of the writing but would tend to show either that the parties did not intend for the document to be delivered as a contract (*Passanante v. Callier*), or that until the occurrence or non-occurrence of some event the contract was not to come into being. (*State Bank v. Cirivello.*) In a case somewhat analogous to the present one, this court held in *Huegel v. Sassaman* (1979), 75 Ill. App. 3d 414, 393 N.E.2d 1361, that parole evidence of negotiations and agreements between the parties prior to the date of a contract for the sale of a distributorship to show that securing financing was a condition precedent to the formation of the contract was properly considered by the trial court in determining that no binding contract was created, despite the fact that the agreement provided that it superseded all prior agreements of the parties. The court noted that parole evidence would not be admissible to show that securing financing was a condition precedent to the performance of the contract, but was admissible to show that financing was a condition precedent to the existence of the contract itself. The rationale for this rule has been stated to be that a document unconditional on its face is presumed to be evidence of a binding agreement in full force according to its terms, and this is especially true where, as in the present case, the alleged condition could have been easily inserted in the contract and the failure to do so is unexplained. (*Haas v. Cohen* (1973), 10 Ill. App. 3d 896, 295 N.E.2d 28; see also *20 East Cedar Condominium Association v. Luster* (1976), 39 Ill. App. 3d 532, 349 N.E.2d 586; 3 Corbin on Contracts §583, at 471 (1960); 4 Williston on Contracts §634, at 1027 (3d ed. 1961).) It therefore appears that under *Huegel*, if the affidavit of Carol Travis presented facts from

which the trial court could have concluded that a genuine question of fact existed as to whether securing financing was a condition precedent to the formation of the contract, summary judgment should not have been granted.

■■ The Travis affidavit, however, states only that plaintiff knew defendant was arranging a construction loan but had not yet obtained approval and that the parties had agreed that the contracts would not be performed unless a construction loan was obtained by defendant. Defendant correctly notes that in reaching a determination on summary judgment, a trial court may only consider evidentiary facts and not conclusions of law. They argue that the affidavit did not allege facts, but offered mere conclusions as to the existence of such a condition and, therefore, the trial court had no evidence before it to justify a determination that financing was a condition precedent to the existence of the contracts. (See *Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 343 N.E.2d 544; Ill. Rev. Stat. 1979, ch. 110A, par. 191(a).) This court need not, however, decide which of the statements in the affidavit are conclusions of law and which are statements of fact because nowhere in the affidavit does Carol Travis state that financing was a condition precedent to the formation of the contract. Rather, she there stated that the contracts would not be *performed* unless a construction loan was obtained. The parole evidence rule would prevent the trial court from considering evidence of prior negotiations or agreements that financing was a condition precedent to the performance, as opposed to the formation, of the contract. (See *Huegel v. Sassaman*.) Accordingly, as the affidavit raised no triable issue of fact as to whether financing was a condition precedent to the existence of the contract, summary judgment as to liability was properly granted.

Defendant next contends that the provision in their contract requiring defendant to furnish documentation of availability of funds before plaintiff will be expected to start work acted as a demand for adequate assurance of performance under section 2—609 of the Uniform Commercial Code and plaintiff should have taken no action to its detriment.

■■ Under section 2—609 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—609), a party to a contract for sale may demand adequate assurance of performance from the other party when reasonable grounds for insecurity arise with respect to his performance. Article 2 of the Uniform Commercial Code, however, applies only to "transactions in goods" (Ill. Rev. Stat. 1979, ch. 26, par. 2—102), and it has been held that whether the Uniform Commercial Code applies to a given transaction is to be determined by whether the predominant purpose of the contract is one for *goods* or *services*. (*Executive Centers of America, Inc. v. Bannon* (1978), 62 Ill. App. 3d 738, 379 N.E.2d 364.) Where that test has been applied to construction contracts it has been held that since these

contracts are mainly for services, the Uniform Commercial Code does not govern them. (*Niagara Mohawk Power Corp. v. Graver Tank & Manufacturing Co.* (N.D. N.Y. 1979), 470 F. Supp. 1308; *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (W.D. Pa. 1978), 453 F. Supp. 527; *Christiansen Brothers, Inc. v. State* (1978), 90 Wash. 2d 872, 586 P.2d 840.) We conclude section 2—609 does not affect the rights of the parties in this case.

Defendant also contends that in the trial of the damage issue the trial court erred in the admission or exclusion of evidence, its rulings on defendant's objections to testimony and in refusing certain instructions tendered by defendant. We have reviewed each of these claimed errors and find them to be without merit. We note that the excluded evidence and instructions related to issues of liability which had been resolved by summary judgment and were not before the jury.

For these reasons the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.