REAVY GRADY & CROUCH REALTORS *et al.*, Plaintiffs-Appellants, *v.* JAMES W. HALL *et al.*, Defendants-Appellees.—(Ray L. Unterbrink, Plaintiff.)

Fourth District   No. 17338

Opinion filed November 15, 1982.

GREEN, P.J., dissenting.

Wayne R. Golomb and Thomas Y. Pearson, both of Springfield, for appellants.

Edward G. Pree, of Pree and Pree, of Springfield (Michael W. Hogan, of counsel), for appellees.

JUSTICE TRAPP delivered the opinion of the court:

This action arises out of a real estate listing contract for an apartment building in Chatham, Illinois. Appellants, Reavy Grady and Crouch Realtors, and Willard Kennedy, a realtor, sued to recover $14,000, alleging earned as a real estate commission, plus costs of suit. Defendant, Joyce L. Hall, was dismissed at the close of the plaintiffs' case. The trial court found for the defendants on all counts of the complaint. All plaintiffs, except Ray Unterbrink, appeal the trial court's decision.

When the defendant, James W. Hall, moved to Florida in 1976, he employed Howard McCormick to manage the Chatham property. In 1978, McCormick told the defendant that he had a prospective purchaser for the apartments. The defendant then sent McCormick a letter which authorized him to act as defendant's representative in the sale of the apartments. The letter further stated that McCormick was empowered to act in the defendant's best interest as agreed upon by the defendant and his attorney. The letter did not specifically refer to McCormick's prospective buyer. At trial, the defendant stated that this letter of authorization was for the sale to McCormick's prospective buyer and no one else.

On September 10, 1978, McCormick told the defendant that he had listed the property with plaintiff, Willard Kennedy, of Century 21 Realty. This multiple listing agreement was executed on September 2, 1978. The defendant said that he was terribly upset about the listing

with Kennedy. According to the defendant, his prior understanding with McCormick was that, if McCormick's prospective buyer backed out, the defendant would find his own realtor. McCormick testified, however, that he and the defendant did discuss listing the property with a realtor, and that the defendant agreed to the listing with Kennedy. After he learned of the multiple listing contract, the defendant did not tell McCormick to cancel it, and also never personally attempted to cancel the agreement.

On September 27, 1978, McCormick informed the defendant that Kennedy had found a buyer, Ray Unterbrink, who was offering $200,000. Unterbrink's offer had to be accepted on or before noon September 28. At approximately 10:40 a.m. (EST), Kennedy and the defendant discussed Unterbrink's offer and Kennedy's commission. The defendant did not want to accept the offer. He then terminated the conversation because he wanted to discuss the matter with his attorney and accountant. Although the defendant could not reach his attorney, he did have a discussion with his accountant. After this, the defendant again talked to Kennedy. The time of this conversation and what occurred next are in dispute. According to the defendant, he told Kennedy that he still opposed the sale, but was uncertain of what action he should take. When Kennedy suggested sending a telegram of acceptance, the defendant replied that he would send such a telegram only on the condition that the sale was subject to the approval of both his attorney and accountant. Kennedy testified that the defendant accepted the offer. Kennedy supplied the defendant with the words to use in the telegram. According to Kennedy, he told the defendant that he would sign, as agent, the defendant's name on the contract of sale. Kennedy stated that the defendant put no stipulation on his acceptance, and did not inform Kennedy that the acceptance was contingent upon the approval of his accountant or attorney.

The mailgram which defendant sent to Kennedy read:
> "I accept Ray Unterbrink's offer of $200,000 for 405 East Mulberry Chatham Illinois for these apartments."

The defendant stated that he considered adding the words "subject to the approval of a lawyer" to the mailgram. However, he did not do so because he had Kennedy's promise to send copies of the contract to defendant's lawyer and accountant, and because defendant did not wish to spend the money on the additional words. The defendant claimed that he never authorized Kennedy to sign the contract of sale.

Later on the afternoon of September 28, 1978, the defendant decided against selling the apartment. The primary reason for rescinding the sale was that the price was too low. The defendant testified

that he called Kennedy on October 2, 1978, to cancel the sale. The defendant told Kennedy that he had finally been able to talk with his lawyer and that his attorney advised defendant against the sale. Kennedy could not recall talking with defendant on this date. Kennedy testified that his first notification of defendant's cancellation was upon receipt of a letter from the defendant dated October 9, 1978. This letter read as follows:

"After further consideration I do not wish to accept the offer of Ray Unterbrink to buy the apartments from me at 405 E. Mulberry, Chatham, Illinois, for $200,000.

I am hopeful that you will be successful in selling the apartments closer to the listed price of $280,000 during the balance of the three months in which the property is listed with you.

During the next several weeks, I will do everything possible to bring the apartments into better condition for you to sell. My plans are to spend this weekend and most of next week personally working on the apartments.

I would appreciate your suggestions how we can get a better price on the apartments."

The trial court found that no enforceable sales contract existed because Kennedy did not have the power of an agent. The plaintiffs now claim that an agency between Kennedy and defendant was established by ratification. For purposes of argument, the plaintiffs assume that McCormick's listing of the property with Kennedy was beyond the scope of the agency granted to him by the defendant. However, defendant's actions in continuing the seller-broker relationship with Kennedy constituted a ratification of McCormick's conduct. We agree.

The authority of an agent may come only from his principal. Where an agent has acted outside the scope of his authority, a principal may ratify the act and render it obligatory upon himself; and that subsequent assent and ratification is equivalent to an original authority and confirms that which originally was an unauthorized act. A principal needs to have a full knowledge of the facts and the choice of either accepting or rejecting the benefits of the transaction. *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.

■■ We find that the defendant ratified, through acquiesence, McCormick's participation in the multiple listing agreement. (See *Magid v. Drexel National Bank* (1947), 330 Ill. App. 486, 71 N.E.2d 898; *American Car & Foundry Co. v. Industrial Com.* (1929), 335 Ill. 322, 167 N.E. 80.) The defendant admitted that McCormick informed him of the listing agreement approximately three weeks before Kennedy presented Unterbrink's offer. The defendant did not tell McCormick

to cancel the listing agreement, and did not attempt to cancel the agreement himself. Even after the defendant informed Kennedy, by letter, that he would not accept Unterbrink's offer, the defendant still wished to retain Kennedy's representation. Thus, the defendant ratified McCormick's signing of the multiple listing agreement.

Where a broker enters into a listing agreement with the property owner and procures a purchaser ready, willing, and able to purchase upon the terms proposed by the seller, the broker is entitled to his commission. (*Haas v. Cohen* (1973), 10 Ill. App. 3d 896, 295 N.E.2d 28.) The listing agreement in the instant case specifically provided for payment of the broker's commission in the event the broker found a ready, willing, and able purchaser. Unterbrink was such a purchaser.

■ The defendant points out that his wife, Joyce Hall, was dismissed from the case. Her dismissal does not have any effect on the plaintiffs' right to a commission. The fact that the seller may not be the sole owner of the property neither renders the sale agreement unenforceable, nor affects the seller's liability under the listing agreement where the broker has performed according to its term. *Haas.*

The plaintiffs also contend that the defendant, as the principal, has failed to prove by a preponderance of the evidence that conditions or qualifications existed on an otherwise general grant of authority.

■ The listing agreement clearly delegated a general power to sell defendant's property. The defendant said that his acceptance of Unterbrink's offer was conditional, and would become final only upon approval of both his attorney and his accountant. Plaintiffs argue that, by reciting these conditions, the defendant is attempting to modify the term of the listing agreement through parol evidence. Parol evidence is admissible to show a condition precedent to the existence of a contract. (*Huegel v. Sassaman* (1979), 75 Ill. App. 3d 414, 393 N.E.2d 1361.) We have reviewed the record closely and conclude that defendant's evidence does not support his contention that he placed qualifications upon an otherwise general grant of authority to Kennedy. According to the defendant, he informed Kennedy that he would accept Unterbrink's offer only with stipulated conditions. However, the defendant admits that his decision to cancel the sale was made unilaterally on the very day that he sent the mailgram. We find it difficult to believe that Kennedy, as an experienced broker, would consider defendant's conditions as an acceptance, rather than a counteroffer. Kennedy stated that the defendant placed no conditions upon his acceptance. This assertion is strongly reinforced by the mailgram which contained no trace of the purported conditions. RaJean Mudgett, a salesman for Reavy Grady and Crouch Realtors, showed the defend-

ant's property to Unterbrink. She testified that Kennedy called her before noon on September 28, 1978, and announced that defendant had accepted the offer. The testimony of Mudgett and Kennedy, combined with certain portions of the defendant's own testimony, clearly shows that the defendant failed to prove, by a preponderance of the evidence, that he placed qualifications or conditions on his grant of authority to Kennedy.

We find that the defendant, through acquiesence, ratified his agent McCormick's participation in the multiple listing agreement. The defendant failed to prove that his acceptance of Unterbrink's offer was conditional. The plaintiffs procured a purchaser ready, willing, and able to purchase upon the terms proposed by the seller. Thus, the plaintiffs were entitled to their real estate commission.

Accordingly, we reverse the trial court. This cause is remanded with directions that the trial court enter judgment for the plaintiffs Reavy Grady & Crouch Realtors and Willard Kennedy in the amount of $14,000 plus costs.

Reversed and remanded with directions.

MILLS, J., concurs.

PRESIDING JUSTICE GREEN, dissenting:
While plaintiff argues that defendant failed to prove by a preponderance of the evidence that the general grant of authority in the telegram was conditional or qualified, the issue in this respect at this stage of the proceedings is whether the trial court's finding that it was, is contrary to the manifest weight of the evidence. *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288.

The trial court heard the testimony of Kennedy that defendant made no oral qualifications to the mailgram purporting acceptance of Unterbrink's offer. It also heard the testimony of defendant that he did make such oral qualifications. While the circumstantial evidence surrounding the transaction tends to support plaintiffs' version of what happened, the trial court heard the testimony of the two witnesses who were privy to this crucial telephone conversation and observed their demeanor and manner. I do not find that determination of the trial court to be palpably wrong, nor do I conclude that a different result was clearly evident. *Owen v. Pret' A Porter Boutique, Inc.* (1973), 15 Ill. App. 3d 438, 302 N.E.2d 672.

Accordingly, I would affirm the circuit court.