VINCENT DiVITO, INC., Plaintiff-Appellant, v. VOLLMAR CLAY PROD-
UCTS COMPANY, Defendant-Appellee and Third-Party Plaintiff (Armco,
Inc., Third-Party Defendant).

First District (5th Division)   No. 87—3286

Opinion filed February 3, 1989.

Gerald L. Angst, Richard J. O'Brien, and Gerard D. Kelly, all of Sidley & Austin, of Chicago, for appellant.

Torshen, Schoenfield & Spreyer, Ltd., of Chicago (Jerome H. Torshen, Abigail K. Spreyer, and James K. Genden, of counsel), for appellee.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiff, Vincent DiVito, Inc., appeals from: (1) the denial of its motion for summary judgment on a cause of action seeking promissory estoppel; (2) the granting of defendant Vollmar Clay Products Company's cross-motion for summary judgment on DiVito's promissory estoppel cause of action; and (3) the granting of Vollmar's cross-motion for summary judgment on DiVito's cause of action for breach of contract.

We affirm the denial of DiVito's motion seeking summary judgment on its promissory estoppel count; reverse the entry of summary judgment in Vollmar's favor on DiVito's promissory estoppel count; and affirm the entry of summary judgment in Vollmar's favor on DiVito's breach of contract count. We do so for the following reasons.

In November 1982, the Village of Palatine (Village) solicited bids for a federally funded sewer construction project. DiVito desired to be the general contractor for the Village on this project. Vollmar, a distributor of piping materials, entered into these negotiations with the hope of becoming DiVito's subcontractor in the event the latter was awarded the contract. As part of these negotiations, Vollmar quoted prices to DiVito. On February 14, 1983, DiVito submitted a bid to Palatine, which included Vollmar's prices. DiVito was the low bidder and Palatine announced that it was awarding it the contract. On March 15, 1983, Vollmar sent DiVito a price list, guaranteeing that the quoted prices would be "good until 12-31-85," the expected completion date of the project. The second low bidder filed a protest on March 21, 1983, contesting the award.

On August 8, 1983, while the bid protest was being litigated,

Vollmar was notified by its supplier, Armco, Inc., that piping prices were rising (Vollmar has filed a third-party action against Armco, which is not relevant to this appeal). Vollmar, in turn, notified DiVito that it was withdrawing the March price quotation. On October 6, 1983, the bid protest was resolved in DiVito's favor by the Federal district court. At DiVito's request, Vollmar submitted a new price list in November 1983. In December 1983, DiVito and Palatine entered into a contract for the project. DiVito, however, placed its order for piping with a competitor of Vollmar.

On May 29, 1985, DiVito filed a two-count complaint against Vollmar, seeking to recover the difference between the price of the piping ultimately ordered and the price quoted by Vollmar in March 1983. Count I of the complaint avers that Vollmar breached an oral contract with DiVito; count II seeks to estop Vollmar from denying its promise to supply piping at the prices quoted in March 1983, given DiVito's reliance thereon.

On December 15, 1986, DiVito moved for summary judgment upon count II of its complaint, which sounded in promissory estoppel. On June 10, 1987, following a hearing, the motion was denied. Subsequently, Vollmar filed a cross-motion for summary judgment directed against count II of DiVito's complaint, as well as count I, which sounded in breach of contract. On September 21, 1987, Vollmar's cross-motion was heard, along with DiVito's motion for reconsideration of the court's denial of its motion for summary judgment seeking promissory estoppel. At this hearing, the circuit court denied DiVito's motion and granted Vollmar's cross-motion.

■ The purpose of summary judgment is to determine the presence or absence of triable issues of fact. (*Amin v. Knape & Vogt Co.* (1986), 148 Ill. App. 3d 1075, 1077, 500 N.E.2d 454, 455.) In determining whether the moving party is entitled to summary judgment, the pleadings, depositions, admissions, and affidavits should be construed strictly against the movant and liberally in favor of the opponent. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397, 402.) If the facts allow for more than one conclusion or inference, including one unfavorable to the movant, the motion should be denied. In short, the right of the moving party must be clear and free from doubt. *Amin v. Knape & Vogt Co.* (1986), 148 Ill. App. 3d 1075, 1077, 500 N.E.2d 455, 456.

■ In light of these guiding principles, the entry of summary judgment in Vollmar's favor on DiVito's promissory estoppel claim must be reversed. The elements of promissory estoppel are: a promise unambiguous in terms, with reliance thereon by the promisee,

with such reliance being expected and foreseeable by the promisor, and with the promisee in fact relying on the promise to his injury. (*S.M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App. 3d 137, 139, 318 N.E.2d 722, 724.) The underlying purpose of the doctrine of promissory estoppel is to protect innocent parties. Accordingly, in order to invoke the doctrine, the promisee's reliance must be reasonable and justifiable. *S.N. Nielsen Co. v. National Heat & Power Co.* (1975), 32 Ill. App. 3d 941, 944, 337 N.E.2d 387, 389.

■ As to count II of DiVito's complaint, we conclude that there is a triable issue of fact concerning whether its reliance upon Vollmar's price guarantee was reasonable in view of the *custom and usage* in the construction trade regarding such guarantees. Paragraph 4 of count I of DiVito's complaint, incorporated by reference into count II, alleged:

> "During the week of February 7, 1983, while DiVito was preparing its bid for the Palatine Project, Vollmar contacted DiVito and offered to supply to DiVito various materials for the Palatine Project. In particular, Vollmar agreed that, if DiVito was awarded the Palatine Project, Vollmar would sell to DiVito certain truss pipe, plastic pipe, fittings, and appurtenances at the prices set forth on Exhibit A hereto, and that such prices would be 'good until 12-31-85.' (*See* Exhibit A, p. 7)."

Vollmar answered: "Defendant admits the allegations of paragraph 4. Vollmar's proposal was in accord with custom and usage in the trade."

■ Vollmar argues that this admission is irrelevant, because it was not reasonable for DiVito to rely upon a guarantee unsupported by consideration. Consideration is not an element of promissory estoppel (see *Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 124, 311 N.E.2d 138, 140), and Vollmar does not contend to the contrary. However, to hold that consideration is decisive in determining whether reasonable reliance is present would, in effect, make consideration an element of promissory estoppel in construction cases. We are unwilling to go so far, absent clearer evidence of construction industry practices. If Vollmar is wrong about *custom and usage,* our acceptance of its argument could have serious consequences for the industry.

After raising the issue of *custom and usage* in its answer, Vollmar was bound to show that DiVito's reliance on the price guarantee was unreasonable, given such *custom and usage,* if it wished to prevail upon a motion for summary judgment. Yet there is con-

flicting testimony in the record on this issue. Armco's sales representative, Richard Rogers, testified in his deposition that under prevailing custom in the construction industry, a contractor cannot rely on a quoted price after an order has been delayed 60 to 90 days, even if the price was guaranteed. But Joe Schulenburg, Vollmar's president, testified in his deposition that the guarantee was included because Vollmar wanted to protect the job until it was complete. According to Schulenburg, DiVito did not request the December 31, 1985, date. This fact is confirmed by the deposition testimony of Benedetto DiVito, DiVito's president. When construed against Vollmar, the testimony of Schulenburg and DiVito gives rise to an inference that it is reasonable to rely upon such guarantees in the construction trade.

Just as this conflicting testimony leads to the conclusion that the circuit court erred by entering summary judgment in Vollmar's favor on count II (promissory estoppel), of DiVito's complaint, it also leads to the conclusion that the circuit court did not err by refusing to enter summary judgment in DiVito's favor on count II.

■■ ■ We conclude that the circuit court correctly granted summary judgment in Vollmar's favor on count I of DiVito's complaint, which purported to state a cause of action for breach of contract. To create an enforceable contract, there must be an unequivocal acceptance. (*Lee Shell Co. v. Model Food Center, Inc.* (1969), 111 Ill. App. 2d 235, 244, 250 N.E.2d 666, 671.) There can be no contract where the offeror cannot reasonably treat the offeree's response as an acceptance. *McCarthy v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 510, 411 N.E.2d 936, 944-45.

At his discovery deposition, Benedetto DiVito also testified that he told Vollmar's dispatcher, Michael Anton, that the prices submitted by Vollmar were the "low numbers" and that DiVito was "going to use your number" in the bid. These statements fall short of an unequivocal acceptance, and it would have been unreasonable for Vollmar to treat them as such. The circuit court rightly observed that Vollmar could not have enforced an oral contract against DiVito on the basis of these statements alone.

DiVito relies upon the cases of *Illinois Valley Asphalt, Inc. v. J.F. Edwards Construction Co.* (1980), 90 Ill. App. 3d 768, 413 N.E.2d 209, and *A.J. Davinroy Plumbing & Heating v. Finis P. Ernest, Inc.* (1980), 87 Ill. App. 3d 1047, 409 N.E.2d 372, to support its contention that the circuit court erred in granting Vollmar's motion for summary judgment on count I (although it is noteworthy that DiVito did not press this claim in its reply brief or at oral ar-

gument). But these cases are distinguishable. In *Illinois Valley*, the plaintiff proceeded upon a theory of promissory estoppel, not a contract theory. And, the testimony in that case (words to the effect that if the plaintiff got the job, then the defendant would get the job) was less equivocal than the testimony in this case. In *Davinroy*, the testimony which led the trial court to conclude that an oral contract had been entered into is not set forth in the opinion.

In conclusion, we remand this case to the circuit court for trial on DiVito's promissory estoppel claim, as set forth in count II of its complaint, and the issue of whether it was reasonable for DiVito to rely upon Vollmar's price guarantee, given the *custom and usage* in the construction trade. The judgment of the circuit court is affirmed in all other respects.

Affirmed in part; reversed in part and remanded.

MURRAY, P.J., and PINCHAM, J., concur.