ROBERT O. BOGUE, Plaintiff-Appellee, v. GREG SIZEMORE, Defendant-Appellant.

Fourth District   No. 4—92—0457

Opinion filed February 18, 1993.

COOK, J., dissenting.

Dole & Crispin, of Paris (Peter T. Dole, of counsel), for appellant.

Massey, Anderson & Gibson, of Paris (E. Robert Anderson, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff Robert O. Bogue (Robert), an excavation subcontractor, filed a small claims complaint against defendant Greg Sizemore (Sizemore), seeking to recover on an alleged contract to perform excavation services as a subcontractor to Sizemore on a contract with a

third party. Following a bench trial in the circuit court of Edgar County, that court entered judgment in favor of Robert and against Sizemore in the sum of $2,002.81 and costs. Sizemore appeals and we affirm.

The parties' dispute centers on a written document signed by Sizemore, whereby Robert was to perform excavation work for Sizemore for $2,700, in preparation for a commercial telephone system to be installed by Sizemore for Bredeman Ford, a car dealership in the Chicago area. Subsequent to entering into the contract with Bogue, Sizemore, however, was not awarded the contract by Bredeman Ford, and Robert, therefore, never performed the excavation work. In the trial court, a dispute arose as to whether Sizemore or the firm for which he was vice-president was the proper defendant. On appeal, Sizemore does not dispute that he was the proper party defendant. The dispute concerns whether Sizemore was contractually bound under the written document to pay Robert for the described work, as the court found, or whether any obligation of Sizemore to pay Robert for the work was at most conditioned upon Sizemore obtaining the contract to do the work for Bredeman Ford, as Sizemore contended.

The record does not contain a transcript of the evidence at the bench trial. However, a document is provided in the record, designated "Report of Proceedings," but in the nature of a bystander's report which was approved by the trial judge. It states that Robert testified as follows: (1) he owned a second business engaging in trenching and backhoe work as a contractor; (2) he previously worked for Sizemore as an operations manager at Sizemore's prior communications business; (3) his brother, Ross Bogue (Ross), is part owner of Sizemore's current communications business; (4) in November 1990 Ross called him concerning the potential subcontracting opportunity at Bredeman Ford; (5) the job was to be done independent of the communications business; (6) Sizemore subsequently discussed the job with him indicating it "would be a rush job which needed to be done immediately over the weekend of November 30 and December 1, 1990"; (7) the job consisted of "trenching and boring under driveways to lay cable to connect two automobile dealerships"; (8) he had previously done subcontract work for his brother and Sizemore personally, and for their communications business; (9) usually he would inspect the site and give his brother or Sizemore a "quote" on the trenching work, and they would use that bid in their bid for the overall contract; and (10) generally his brother or Sizemore would contact him for excavation bids.

Robert further testified that (1) prior to the weekend he was to begin work he sent a proposed contract by "fax machine" to Sizemore because "he would not agree to leave Paris or perform any work until he had received a signed contract" from Sizemore; (2) on November 29, 1990, the day before the job was scheduled to begin, he received by "fax machine" a copy of his proposed contract signed by Sizemore; (3) at 3:30 p.m. on November 29, 1990, just prior to receiving the signed contract, he received a call from his brother and Sizemore informing him the job was delayed for a week but "still on"; (4) he was told that the job was delayed because of a problem with obtaining the cable; (5) Sizemore agreed to pay his additional expenses due to the delay; (6) the delay continued until January 1991, when he was told that "the contract had died"; and (7) Sizemore told him "the contract would not be completed."

Sizemore did not testify at the hearing; however, Robert's brother, Ross, testified for the defense as follows: (1) in early 1990, Sizemore's firm was invited by Bredeman Ford to submit a bid on an "integrated communications and computer system to be installed between two automobile dealerships owned by Bredeman Ford"; (2) he contacted Robert "so that he could look at the trenching work to be done as part of the general contract"; (3) he received a quote from Robert for the excavation work; (4) he used Robert's quote in his bid for the general contract; (5) the next day after receiving the subcontract quote from Robert, Sizemore's firm did not get the Bredeman Ford contract; (6) they continued to try and secure the Bredeman Ford contract for the next month to six weeks; (7) during that time they advised Robert they were trying to secure the contract, but had not yet been successful; and (8) he told Robert "there was no contract but they still had hopes of getting the contract as it had not been given to any other contractor."

Ross further testified that the "quotation" signed by Sizemore was merely for internal use in the business, and that they use the "quotations in agreements with subcontractors to lock in subcontractor quotes prior to making general quotes to a perspective customer." Ross denied that the Bredeman Ford job was independent of Sizemore's firm, and he denied ever telling Bogue that the Bredeman Ford contract was a "special deal not involving the corporation." Finally, Ross testified that it was their practice to sign subcontract quotes to "indicate that the complete job was as described and to lock in the subcontract at the quoted price."

The evidence included the written document prepared by Robert and signed by Sizemore, which was transmitted to Robert by fax ma-

chine on November 29, 1990, after Sizemore had informed Robert of a delay in the Bredeman Ford project. The document was on a form which had Robert's name and company name printed on top, along with a listing of the various types of work which Robert did, including trenching and mechanical service, which had been circled. The form also had "Estimate/Invoice No." printed on top. Handwritten on the form were the names of Ross Bogue and Sizemore, their company name, and a description of Robert's work to be done for the Bredeman Ford project for $2,700. In small print were the "Conditions of Contract," which, among other things, provided for progress payments "upon receipt of invoice." The agreement was not expressly conditioned on Sizemore being awarded the Bredeman Ford contract. Sizemore's signature appears on a line near the bottom of the document and under that line a statement was printed in the following words: "Signature indicates the price stated above is agreeable. Signee promises to pay for the above described work."

■ On appeal, Sizemore does not dispute the court's finding that the written document he signed was a binding contract. Rather, Sizemore claims that the agreement was a binding bilateral contract conditioned on his being awarded the Bredeman Ford contract. Although the document did not expressly contain this condition, Sizemore claims that the condition should be implied. Sizemore bases his contention on a theory in construction contract law which purportedly indicates that bilateral contracts arising from bidding between a subcontractor and a general contractor are generally, as a matter of law, impliedly conditioned on the general contractor receiving the overall contract. The contract is conditional because the parties allegedly do not know at the time of contracting whether the general contractor will get the overall contract. (See generally Closen & Weiland, *Competitive Bidding and Contract Formation in the Construction Industry,* in Contracts and Sales of Goods ch. 17, §§17.12, 17.13 (Ill. Inst. for Cont. Legal Educ. 1990) (an analysis of the possible implications of *James Baird Co. v. Gimbel Brothers* (2d Cir. 1933), 64 F.2d 344, 346; *Loranger Construction Corp. v. E.F. Hauserman Co.* (1978), 376 Mass. 757, 384 N.E.2d 176).) In addition, Sizemore contends that the parties' past conduct comports with the bidding process in the construction industry and, therefore, warrants application of the condition even if such a condition was not expressly stated in the contract.

■ We conclude that even if a general rule exists where a condition that the general contractor receive the overall contract can be implied when the general contractor and subcontractor enter into a bilateral contract at the bidding stage of the overall contract, the trial

court could properly conclude such was not the intention of the parties here. The trial court found that on the day Robert was to leave for the Bredeman Ford project, Robert had a verbal confirmation from Sizemore that he was to start the job. At this time Robert insisted upon a written contract and Sizemore complied.

The parties do not dispute that originally an oral agreement was made that on the weekend of November 30 and December 1, 1990, Robert was to do trenching and boring work at the jobsite and that Robert was to make definite preparations to do the work. Clearly the court could properly find that such an agreement was a bilateral contract which, unlike others the parties had entered into, was not conditioned upon Sizemore receiving a contract to do the job. The fact that, shortly before Robert received the faxed signed document, he was informed the work would be delayed for another week did not require a determination that the agreement then became contingent upon Sizemore obtaining the contract to do the work. Robert testified that he was told that the reason for the delay was because of the lack of cable. The court could properly have determined that when the faxed signed agreement was accepted by Robert, no representation had been made to him that the agreement was conditioned upon Sizemore receiving the contract and that no such condition should be implied from the circumstances.

Sizemore claims that the parties' past dealings were typical of the construction industry and Robert failed to show a departure in the instant case from the parties' prior dealings. Sizemore notes that Robert failed to testify that in any of the parties' other past dealings there ever was an express condition that the work was contingent on getting the overall contract, yet there was no evidence Robert ever got paid for a job where his bid was used in preparation of the general contract and the general contract was never received.

The trial court found that in the past Ross would call Robert when there was a prospective contract and Robert would look at the job and give Ross a quote. Robert's quotes would be used in the bid for the overall contract, but Robert did not always get the subcontracting job. Ross and Sizemore would get approximately half the contracts for which they would submit a bid. However, despite the pattern of past dealings between the parties, no evidence was introduced of a document like the one here being signed by Sizemore nor was any evidence presented of prior actions by Robert, similar to those here, by which he requested assurance of payment before proceeding.

The determination of the circuit court was not contrary to the manifest weight of the evidence and was in accordance with principles of contract law. Accordingly, we affirm.

Affirmed.

STEIGMANN, P.J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent.

In traditional contract terms a subcontractor's quote to a general contractor is only an offer, which the subcontractor is free to withdraw at any time before the general contractor accepts it. The subcontractor may accordingly withdraw the offer after the general contractor has used it to compute the bid on the prime contract, and even after the prime contract has been awarded. Likewise, the general contractor has no obligation to accept the subcontractor's offer, even if the general contractor is awarded the prime contract. Subcontractors may renege on their quotes; general contractors, with the leverage of the award of the prime contract and the subcontractor's quote in their pocket, may shop around for lower subcontract bids, or apply pressure to the bidding subcontractor to reduce his bid (all with no benefit but possible detriment to the owner).

This situation is an undesirable one for the parties involved, and for the public at large, who ultimately bear the cost of unfair contract bidding. (See Closen & Weiland, *Competitive Bidding and Contract Formation in the Construction Industry*, in Contracts and Sales of Goods ch. 17, §17.9 (Ill. Inst. for Cont. Legal Educ. 1990) (hereinafter Closen & Weiland).) The Illinois cases have given the general contractor protection by the doctrine of promissory estoppel: a promise unsupported by consideration may be binding if the promisee reasonably relied upon it to his substantial detriment. (*S.M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App. 3d 137, 318 N.E.2d 722; *Vincent DiVito, Inc. v. Vollmar Clay Products Co.* (1989), 179 Ill. App. 3d 325, 534 N.E.2d 575; *Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 124, 311 N.E.2d 138, 140.) As applied in these cases promissory estoppel protects the general contractor but not the subcontractor.

It is possible to protect both parties by the execution of a bilateral contract following the subcontractor's quote. The contract would be conditional because there would be no binding obligation on either party unless the general contractor were awarded the prime contract.

"This condition is so obvious and basic in the construction industry setting that it should be implied from the circumstances even if the parties did not expressly so state in the course of their [negotiation]." (Closen & Weiland, §17.13, at 17—17.) A written agreement absolute on its face may be shown to be subject to an unwritten condition precedent. See *Reavy Grady & Crouch Realtors v. Hall* (1982), 110 Ill. App. 3d 325, 329, 442 N.E.2d 307, 310; *Althoff Industries, Inc. v. Elgin Medical Center, Inc.* (1981), 95 Ill. App. 3d 517, 521, 420 N.E.2d 800, 803; Restatement (Second) of Contracts §217 (1981).

The parties to a subcontract can agree that it will be binding even if the general contractor is not awarded the prime contract. Such an agreement would be so unusual, however, that a court should not find one to exist without clear evidence. Such a contract would, in essence, involve a penalty as the general contractor would be required to pay for work which was not done, from funds which he did not receive. If a contract requires payment to a subcontractor who does not do the work, the contract would logically be expected to set out a formula specifying how the payment would be calculated. There is no language in the simple single-page invoice-form contract here which would indicate that defendant's obligation is unconditional. Nor is there any testimony shown in the bystander's report which would support an unconditional contract. The only expression of plaintiff's intent is that "[p]laintiff testified that he would not agree to leave Paris or to perform any work until he had received a signed agreement from [defendant]." The majority opinion states that, despite the past dealings between the parties, no evidence was introduced of a document like the one here being signed by defendant. That is true enough, but what does the existence of the document (as opposed to its language) suggest? Was plaintiff afraid he would do the work and not get paid? Was he afraid he would arrive at the jobsite and there would be a delay? Was he afraid defendant would choose another subcontractor after the prime contract was let? The record suggests all those concerns, but none of them are inconsistent with a conditional subcontract.

It may be plaintiff's argument that a representation had been made to him, before defendant executed the subcontract, that the prime contract had been awarded; therefore, the subcontract had to be unconditional. Again, the bystander's report contains little support for such an argument. It is clear defendant was never awarded the prime contract. Plaintiff testified that defendant "never told him" that the contract was contingent on acceptance by Bredeman Ford of the prime contract. Plaintiff, however, knew that his contract was a

subcontract. Plaintiff could not justifiably equate (1) never being told the prime contract had to be accepted, with (2) the fact the prime contract had been accepted. The statements made after the subcontract was executed are consistent with waiting for an award of the prime contract: "the job start was put off and delayed for a week," "the job contract was being delayed further." Even the testimony "that a question on cable was the cause of the delay" is not inconsistent with waiting for the award of the prime contract. Defendant's witness, Ross Bogue, clearly testified plaintiff was told the prime contract had not been awarded. Plaintiff's vague testimony cannot be read to contradict Ross' testimony, especially in light of the strong presumption favoring a conditional contract.

I would reverse the appealed judgment.