Paul **TALANDA**, Plaintiff,

v.

**KFC NATIONAL MANAGEMENT COMPANY, a Delaware Corporation d/b/a KFC a/k/a Kentucky Fried Chicken, a subsidiary of KFC Corporation, a Delaware corporation and a subsidiary of Pepsico, Inc., a North Carolina corporation, Defendant.**

No. 94 C 1668.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 26, 1994.

H. Candace Gorman, Law Office of H. Candace Gorman, Chicago, IL, for plaintiff.

Louis Theros, Dickinson, Wright, Moon, Van Dusen & Freeman, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.

Before the Court is Defendant KFC National Management Company's Motion to Dismiss Counts II, III and IV of Plaintiff Paul Talanda's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### ALLEGED FACTS

Plaintiff Paul Talanda ("Plaintiff") was hired by Defendant KFC National Management Company ("Defendant") in 1978 and promoted first to the position of Restaurant Manager in 1984 and then to the position of Restaurant Training Manager in 1986. (Complaint at ¶¶ 18–20.) As a Restaurant Training Manager, Plaintiff was in charge of hiring, firing, training and management of KFC employees at the KFC restaurant in McHenry, Illinois. *Id.* at ¶ 24.

On or about September 25, 1993, Plaintiff hired Dorothy Bellson for a position at the front counter in the McHenry KFC. *Id.* at ¶ 28. Because of a severe facial impairment, Dorothy Bellson is considered to have a disability as that term is defined in § 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102. *Id.* at ¶¶ 14–15.

Four days later, on September 29, 1993, Joanne Overly, Plaintiff's supervisor, telephoned Plaintiff and instructed Plaintiff to remove Bellson from the front counter because Overly did not like Bellson's facial impairment. *Id.* at ¶ 30. Plaintiff refused to remove Bellson from the front counter. *Id.* at ¶ 33. On October 19, 1993, Plaintiff was terminated by Overly and Resources Director John Malloy for insubordination due to of his refusal to remove Bellson from the restaurant's front counter. *Id.* at ¶ 35.

Plaintiff filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on October 22, 1993. *Id.* at ¶ 2. Plaintiff received a Notification of Right to Sue on December 30, 1993. *Id.* at Exhibit A. On March 1, 1994, Plaintiff filed the Complaint in the instant case alleging a claim of retaliatory discharge in violation of the Americans with Disabilities Act, 42 U.S.C. § 12117. In addition to his federal claim, Plaintiff alleges various state claims including: breach of employment contract (Count II), promissory estoppel—promise not to discriminate (Count III), promissory estoppel—not to be fired for following corporate policy (Count IV), retaliatory discharge (Count V), defamation (Count VI),

false light (Count VII), tortious interference with an economic expectancy (Count VIII) and intentional infliction of emotional distress (Count IX).

Defendant requests that this Court dismiss Counts II, III and IV for failure to state a claim on which relief can be granted. For the following reasons, Defendant's Motion to Dismiss is granted.[1]

**ANALYSIS**

When reviewing a motion to dismiss, the court views all of the facts alleged in the complaint, as well as any inferences reasonably drawn therefrom, in a light most favorable to the plaintiff. *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1992). Dismissal is appropriate only if it is clear that there is no relief that can be granted under any set of facts that can be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

*Count II—Breach of Employment Contract*

According to the allegations in the Complaint, Defendant issued all of its employees an employee handbook. (Complaint at ¶ 47.) The employee handbook allegedly contains a promise not to discriminate against Defendant's employees and a mandate that KFC employees not discriminate against other KFC employees or against customers. *Id.* at ¶ 48. Plaintiff states that the manner in which the employee handbook was disseminated led him to reasonably believe that the handbook constituted an offer including the terms and conditions of Plaintiff's employment with Defendant. *Id.* at ¶ 49. Plaintiff accepted the offer with full knowledge of the terms and conditions. *Id.* at ¶ 51. Plaintiff alleges that Defendant breached the contract by terminating Plaintiff for not following Defendant's instruction to remove Bellson from the front counter.

*Id.* at ¶ 54. Defendant's instruction was allegedly in direct conflict with the implied terms and conditions of Plaintiff's employment as established by the employee handbook. *Id.*

Although not clear from the language of the Complaint, the employee handbook to which Plaintiff refers is "KFC's Team Member Handbook" and the section of the handbook, on which Plaintiff relies, is the "Fair & Equal Treatment" section.[2] (Attached to Plaintiff's Response to Defendant's Motion to Dismiss as Exhibit A.) The "Fair & Equal Treatment" section states in relevant part,

> KFC forbids treating associates or customers differently because of their race, age, sex, national origin, citizenship, disability or religion. You are required to treat all persons with respect. Your discriminatory treatment of others will result in disciplinary action up to and including losing your job.

(KFC Team Member Handbook at 12.)

Defendant asserts that the Fair & Equal Treatment section of the KFC Team Member Handbook is merely a restatement of federal and state law prohibiting discriminatory treatment in employment and accommodations. Defendant states further that anti-discrimination policies which merely restate the law are not contracts because such policies lack consideration. Accordingly, as the Fair & Equal Treatment section is not a valid and enforceable contract, Defendant requests that this Court dismiss Plaintiff's breach of contract claim.

In *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (Ill.1987), the Illinois Supreme Court held that an employee handbook may create enforceable contract rights if the traditional requirements for contract formation are present. The *Duldulao* court

---

1. The following analysis should not be read to suggest or imply a finding by this Court that the Defendant, by instructing Plaintiff to remove Bellson from the restaurant's front counter and by terminating Plaintiff for his refusal to do so, in any way violated the Americans with Disabilities Act.

2. Consideration of the KFC Team Member Handbook does not convert Defendant's Motion to Dismiss into a Motion for Summary Judgement. Documents are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *Venture Associates v. Zenith Data Systems,* 987 F.2d 429, 431 (7th Cir.1993).

described the traditional requirements for contract formation as follows:

First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed.

*Id.* Tracking the language of *Duldulao,* the Plaintiff has pled that the Fair & Equal Treatment section of the KFC Team Member Handbook contained a clear promise that Defendant would discipline and possibly terminate any employee who discriminated against a fellow employee or against a customer. (Complaint at ¶ 48.) Additionally, Plaintiff has alleged that the KFC Team Member Handbook was disseminated in such a manner that the Plaintiff reasonably believed it to be an offer of the terms and conditions of his employment. *Id.* at ¶ 49. According to Plaintiff the offer, memorialized in the Fair & Equal Treatment section, also implied that the Plaintiff would not be terminated if he adhered to the terms of the Defendant's anti-discrimination policy.[3] *Id.* at ¶ 50. Finally, Plaintiff states that he accepted Defendant's offer by commencing and continuing to work after he learned of Defendant's anti-discrimination policy. *Id.* at ¶ 51.

Relying on *Duldulao*'s mandate that the employer's policy statement be analyzed in terms of the traditional requirements of contract formation: offer, acceptance and consideration, the court in *Willis v. Evans Products Co.,* No. 86 C 9111, 1987 WL 11337 *5–6 (N.D.Ill. May 14, 1987), held that the employ-

er's equal employment opportunity policy statement did not give rise to a contract because the policy was merely a restatement of the employer's pre-existing legal duty under the Age Discrimination in Employment Act, and thus unsupported by consideration. *See also, Sample v. Aldi Inc.,* No. 93 C 3094, 1994 WL 48780 (N.D.Ill. Feb. 15, 1994). Both the *Willis* and *Sample* courts distinguished the employee policy in *Duldulao* because it imposed a new legal duty on the employer. In *Duldulao,* the employer's offer to provide a sequence of disciplinary and grievance procedures prior to an employee's termination was an additional duty not previously required by law. *Willis,* 1987 WL 11337 at *6. Thus, the agreement in *Duldulao* was supported by consideration because in the absence of such procedures, the employment relationship would have been presumed to be one which was terminable at will. *Id.*

Plaintiff counters that the instant case is distinguishable from *Willis* and *Sample.* In *Sample,* the anti-discrimination policy, on which the plaintiff relied stated,

It is the policy of ALDI to provide Equal Employment Opportunity to all qualified employees and applicants for employment without regard to race ... and to base all employment decisions so as to further this principle of Equal Employment Opportunity. To this end, ALDI will not discriminate against any employee or applicant for employment because of race ...

1994 WL 48780 at *11. Similarly, the anti-discrimination policy in *Willis* provided that the employer would not discriminate against any employee in placement, upgrading, transfer, demotion, layoff, termination and rates of pay. 1987 WL 11337 at *5. Plaintiff asserts that the anti-discrimination policy in the instant case, unlike those in *Sample* and *Willis,* is not a mere restatement of the law because it requires Defendant to discipline or terminate an employee who discriminates against a fellow employee or a KFC custom-

---

**3.** Contrary to Defendant's assertion, Plaintiff's allegation that Defendant's anti-discrimination policy contained an implied promise that Plaintiff would not be terminated because he adhered to the policy does not mean that as long as Plaintiff did not discriminate against his fellow employees or KFC customers, the Defendant could not terminate Plaintiff. Rather, Plaintiff's Complaint alleges that, because of an enforceable contract right, Plaintiff could not be terminated for the explicit reason that he refused to violate Defendant's anti-discrimination policy.

er. According to Plaintiff, neither Title VII nor the Americans with Disabilities Act requires Defendant to discipline or terminate employees who discriminate against their fellow employees or against Defendant's customers. Plaintiff concludes that, as the Defendant's anti-discrimination policy imposes additional duties on the Defendant, unrelated to any duties the parties may have under federal or state law, the anti-discrimination policy is supported by valid consideration.

Recent Seventh Circuit precedent supports Plaintiff's conclusion that the duties imposed on Defendant by Defendant's anti-discrimination policy are additional duties not mandated by federal law. In *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir.1990) the Seventh Circuit stated,

[U]nder Title VII, the employer, provided it has used due care in hiring the offending employee in the first place, is liable for that employee's torts against a co-worker only if, knowing or having reason to know of the misconduct, the employer reasonably fails to take appropriate corrective action. The employer acts unreasonably either if it delays unduly or if the action it does take, is not reasonably likely to prevent the conduct from reoccurring.

The *Guess* court does not require that the employer discipline or terminate the offending employee, but rather requires that the employer take "corrective action" reasonably likely to prevent the conduct from reoccurring.

Following the rule governing employer liability set out in *Guess*, the Seventh Circuit in *Saxton v. AT & T*, 10 F.3d 526, 535 (7th Cir.1993), approved AT & T's corrective action, which included transferring the offending employee to another division after learning that the plaintiff herself was not interested in transferring to another division, was sufficient. The *Saxton* court concluded that there was "no doubt, from the [plaintiff's] perspective, AT & T could have done more to remedy the adverse effects of [the offending employee's] conduct. But Title VII requires only that the employer take steps reasonably likely to stop the harassment." *Id.* at 536. Because transferring the offending employee prevented potential sexual harassment from reoccurring, the employer was not required to suspend or terminate the offending employer.

Similarly in *Guess*, the Seventh Circuit rejected the plaintiff's argument that transferring the plaintiff, rather than the offending employee, to another department was an improper corrective measure. 913 F.2d at 465. The *Guess* court noted that the plaintiff had been on temporary assignment to the unit where the harassment occurred and the employer simply returned her to her original assignment. *Id.* The *Guess* court also found it significant that the plaintiff's transfer did not result in a reduction of wages or in a reduction of the plaintiff's chances for promotion. Thus, both *Guess* and *Saxton* indicate that an employer, in order to avoid liability for the discriminatory conduct of an employee, does not have to necessarily discipline or terminate the offending employee as long as the employer takes corrective action reasonably likely to prevent the offending conduct from reoccurring. Since an employer does not have a pre-existing legal duty to discipline or terminate an employee who discriminates against other employees, the present case is distinguishable from *Willis* and *Sample* and the promise in the Fair & Equal Treatment section of the employee handbook is supported by consideration.

Defendant asserts that, even if Plaintiff's contract claim is not based on a pre-existing legal duty, it should nevertheless be dismissed because of the at-will and disclaimer provisions in the Team Member Handbook. The at-will employment provision appears on page one of the Team Member Handbook and reads as follows,

All associates at KFC are at-will associates. This means that either the company or the associate can end the employment relationship at any time, for any reason, or for no reason. No one (other than the Chief Executive Officer) representing the Company has the authority to make any type of verbal or written employment contract for any specified period of time.

(Team Member Handbook at 1.) The disclaimer appears at the bottom of the very first page of the handbook and states in relevant part,

This handbook and the guidelines in it are for general direction only. They are not intended to and do not create any rights, contractual or otherwise, between the company and any of its employees and should not be understood as constituting a commitment to any employee that the guidelines must be followed in every case.

According to Defendant, these two provisions prevent the Plaintiff from bringing a cause of action for breach of contract based on an alleged promise made in the Fair & Equal Treatment section of the Team Member Handbook.

The question of the existence of a contract is a matter of law for determination by the court. *Bennett v. Evanston Hospital*, 184 Ill.App.3d 1030, 133 Ill.Dec. 113, 115, 540 N.E.2d 979, 981 (1st Dist.1989). *Belline v. K–Mart Corp.*, 940 F.2d 184, 189 (7th Cir. 1991) lends significant support to Defendant's position. In *Belline*, the Seventh Circuit affirmed the dismissal of plaintiff's breach of contract claim because the employee handbook, on which the plaintiff relied, contained no clear promise regarding the terms of employment and because the disclaimer negated any implied promise in the employee handbook. *Id.* at 190. The *Belline* plaintiff's breach of contract claim was grounded in the employer's Policy on Integrity and Conflict of Interest, which recommended that employees immediately report activities of an unusual nature to management. *Id.* at 189. The plaintiff argued that implicit in his employer's Policy on Integrity and Conflict of Interest was a promise that plaintiff would not be terminated for complying with the policy. *Id.*

The Seventh Circuit contrasted the employee handbook in *Belline*, which contained no clear terms regarding employment, with the employee handbook in *Duldulao*, which assured all permanent employees that they would not be terminated without three warnings and an investigation. *Id.* at 189–90. The Seventh Circuit noted further that the Illinois Supreme Court's decision in *Duldulao* was premised upon the absence of any disclaimer clearly warning the employee that his employment could be terminated at any time with or without cause. *Id.* at 190. As

the employee handbook in *Belline* contained no clear promise regarding terms of employment and a disclaimer clearly warning the employee that his employment was at-will, the Seventh Circuit found the dismissal of plaintiff's breach of contract claim appropriate. *Id.* at 189–90.

Given the similarities between *Belline* and the present case, the Court agrees with Defendant that the at-will and disclaimer provisions require dismissal of Plaintiff's breach of contract claim. The Plaintiff alleges that the Fair & Equal Treatment section of the handbook contained an implicit promise that the Plaintiff would not be terminated if he adhered to the terms of the Defendant's anti-discrimination policy and that he reasonably believed such implicit promise to be an offer of the terms and conditions of his employment. However, even when construed in the light most favorable to the Plaintiff, these allegations cannot overcome the at-will and disclaimer provisions in the Team Member Handbook which indicate that no provision in the handbook was meant to change Plaintiff's at-will status. As in *Belline*, any promise implied by the Fair & Equal Treatment section of the Team Member Handbook was negated by the at-will provision warning Plaintiff that Defendant could terminate him at any time, for any reason or for no reason at all. *See also A.B. Habighurst v. Edlong Corporation*, 209 Ill.App.3d 426, 154 Ill.Dec. 226, 228, 568 N.E.2d 226, 228 (1st Dist.1991) (noting that the weight of authority in Illinois has held that the existence of disclaiming language in an employee handbook precludes the formation of a contract.)

The Court recognizes that at least one Illinois Appellate Court has found that an employee manual created an enforceable contract right despite the manual's disclaimer. *See Perman v. Arcventures*, 196 Ill.App.3d 758, 143 Ill.Dec. 910, 554 N.E.2d 982 (1st Dist.1990). However, the Court finds that the facts of *Perman* are easily distinguishable from the facts of the present case. In *Perman*, the employee relied on a section in the employee manual which stated that discharges must be approved in advance by the director of employee relations and that discharges are subject to employee appeal

through the established grievance procedure. 143 Ill.Dec. at 913, 554 N.E.2d at 985. The grievance procedure was a four step process set out in the employee manual. *Id.* 143 Ill.Dec. at 913–14, 55 N.E. at 985–86.

An implicit promise, that an employee would not be terminated because he refused to discriminate against another employee, inferred from Defendant's explicit promise that it would discipline and possibly terminate any employee who discriminated against a fellow employee is not comparable to the elaborate grievance procedure set out in the employee manual in *Perman.* The elaborate grievance procedure in *Perman* could reasonably lead an employee to believe he had an enforceable employment contract. However, the present case, like *Belline,* does not contain a clear promise regarding the terms of employment, and thus could not reasonably lead an employee to believe he had an enforceable employment contract. *See also A.B. Habighurst,* 154 Ill.Dec. at 229, 568 N.E.2d at 229 (noting that the plaintiff failed to point out statements in his handbook which would constitute clear promises analogous to those in the *Perman* manual.)

Given the language of the Fair & Equal Treatment section, on which Plaintiff relies, and the at-will and disclaimer provisions in the Team Member Handbook, Plaintiff has failed to demonstrate that a reasonable person would consider the employee handbook to constitute a binding contract. Accordingly, Defendant's Motion to Dismiss Count II of the Complaint is granted.

*Counts III and IV*

Count III of Plaintiff's Complaint states a claim for promissory estoppel based on an alleged promise not to discriminate contained in the Team Member Handbook. To the extent that Count III refers to KFC's Equal Employment Opportunity Statement by which KFC commits itself to give equal opportunity to all employees and potential employees without regard to race, color, religion, sex, age, national origin, citizenship or disability, Count III must be dismissed because Plaintiff has not alleged that Defendant discriminated against him on the basis of race, color, religion, sex, age, national origin, citizenship or disability. (Team Member

Handbook at 1.) To the extent that Count III refers to the Fair & Equal Treatment section of the KFC Team Member Handbook and Defendant's alleged promise to discipline or terminate employees who discriminate against fellow employees or customers, it is identical to Count IV, and thus must be dismissed. (Team Member Handbook at 12.)

Count IV states a claim for promissory estoppel based on Defendant's alleged promise, contained in the Fair & Equal Treatment section of the Team Member Handbook, to discipline or terminate employees who discriminate against fellow employees or customers on the basis of race, sex, age, national origin, citizenship, disability or religion. *Id.* To state a claim for promissory estoppel, Illinois law requires that the plaintiff allege (1) an unambiguous promise, (2) reliance on this promise, (3) that the reliance was expected and foreseeable, and (4) some injury resulting from this reliance. *Simmons v. John F. Kennedy Medical Center,* 727 F.Supp. 440, 443 (N.D.Ill.1989). As the underlying purpose of the doctrine of promissory estoppel is to protect innocent parties, the promisee's reliance must be reasonable and justifiable. *Vincent DiVito, Inc. v. Vollmar Clay,* 179 Ill.App.3d 325, 128 Ill. Dec. 393, 395, 534 N.E.2d 575, 577 (1st Dist. 1989).

As already noted above, given the language of the Fair & Equal Treatment section and the at-will and disclaimer provisions, Plaintiff cannot establish that the employee handbook contained a promise clear enough that an employee would reasonably believe that an offer had been made. *See Belline,* 940 F.2d at 189–90; *A.B. Habighurst,* 154 Ill.Dec. at 228–29, 568 N.E.2d at 228–29. Accordingly, Count IV's claim of promissory estoppel is dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Counts II, III and IV of Plaintiff's Complaint is granted.